IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
JANUARY 1997 SESSION



FILED

**October 16, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| BUD CASH, JR., | ) | No. 03C01-9607-CC-00271 |
| | ) | |
| Appellant | ) | |
| | ) | BRADLEY COUNTY |
| V. | ) | |
| | ) | HON. R. STEVEN BEBB, |
| STATE OF TENNESSEE, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (Post-Conviction) |
| | ) | |
| | ) | |

For the Appellant:

Douglas A. Trant
900 S. Gay Street
Suite 1502
Knoxville, TN 37902

For the Appellee:

John Knox Walkup
Attorney General and Reporter

Sandy R. Copous
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493


Jerry N. Estes
District Attorney General

G. Scott Kanavos
Assistant District Attorney
93 N. Ocoee Street
Cleveland, TN 37364

OPINION FILED: _____

AFFIRMED

William M. Barker, Judge

**OPINION**

The appellant, Bud Cash, Jr., appeals as of right the dismissal by the Bradley County Criminal Court of his petition for post-conviction relief. On appeal, he contends that:

(1) his trial counsel was ineffective for permitting the State to amend the indictment without the appellant's consent;

(2) his trial counsel was ineffective for not seeking to suppress the appellant's statement;

(3) two searches conducted of his residence were unconstitutional and his counsel was ineffective for failing to move for suppression of the evidence obtained from them; and

(4) his trial counsel was ineffective for failing to object to irrelevant and prejudicial evidence.

After a thorough review of the record, including the records from appellant's previous two appeals, we conclude that appellant received the effective assistance of counsel. Accordingly, we affirm the trial court's denial of post-conviction relief.

## I. BACKGROUND

Appellant was convicted in 1990 by a Bradley County jury of assault with intent to commit voluntary manslaughter, aggravated assault, and aggravated kidnapping. The victim was appellant's then-girlfriend, Linda Hall. The State's theory was that appellant severely beat the victim and then confined her in his home for five days without seeking medical attention. The victim suffered a skull fracture, a stroke as a result of asphyxiation, permanent brain damage, blunt trauma to the head and extensive bruising over her entire body. Due to the nature of her head injuries, she was unable to remember the incident and required prolonged rehabilitation.

Appellant denied the allegations, explaining that the victim fell out of his van on a Saturday night after she had been drinking. He testified that she hit her head and also fell on two other occasions once inside his home. Appellant further described a disagreement between him and the victim later that evening during which she

2

threatened him with a gun. A struggle ensued and he admitted that he may have inflicted some of the bruises while acting in self-defense. He testified that she repeatedly refused medical treatment so he cared for her those five days. The defense strategy was to portray appellant as a loving man who had thoughtfully cared for the victim's injuries and that he had nothing to hide.

On direct appeal, this Court found that the two assault convictions violated double jeopardy. State v. Bud Cash, Jr., No. 286 (Tenn. Crim. App. at Knoxville, January 30, 1992). There was insufficient evidence that two separate assaults had occurred. Therefore, this Court merged the assault with intent to commit voluntary manslaughter conviction into the aggravated assault conviction. Slip op. at 22. This Court further found that it was unclear as to which count of aggravated kidnapping[1] the State had elected and whether the trial court had properly instructed the jury in that regard. Slip op. at 17. The case was remanded to the trial court to determine the State's election and also to hold a new sentencing hearing on the consecutive nature of the sentences. Slip op. at 26.

On February 14, 1992, the trial court entered an order intended to be in accordance with the remand ordered by this Court. The trial court ascertained that the State had elected aggravated kidnapping with serious bodily injury and further concluded that the jury was properly instructed on this offense. It reinstated the aggravated kidnapping conviction and a new sentencing date was set. After resentencing, appellant appealed the order of the trial court and the consecutive nature of the sentences.

On appeal for the second time, this Court held that the trial court issued the order reinstating the aggravated kidnapping conviction prematurely. State v. Cash, 867 S.W.2d 741, 747 (Tenn. Crim. App. 1993). The order, dated only two weeks after

---

[1]Appellant was indicted on two counts of aggravated kidnapping. One count alleged serious bodily injury as the aggravating circumstance of the offense. The other count alleged commission of a felony during the kidnapping as the aggravating circumstance. When reading the indictment to the jury, the prosecutor referred to these as "alternate, not two counts."

3

the appellate opinion was released, was entered while the appellant was pursuing certiorari to the state supreme court.[2] Therefore, the trial court was without jurisdiction to act. Id. Contrary to the trial court's order, this Court also determined that the State had elected aggravated kidnapping in the commission of a felony and the jury charge did not instruct on the elements of this offense. Id at 748. As a result, the aggravated kidnapping conviction was reversed. Id. Only the aggravated assault conviction remained against the appellant. He was sentenced to six years for that offense.

In May of 1993, while serving his sentence, appellant filed a petition for post-conviction relief attacking the aggravated assault conviction.[3] The petition alleged ineffective assistance of counsel. After the appointment of counsel and an evidentiary hearing, the trial court determined that appellant's trial counsel was not ineffective, finding that in each instance the actions of counsel were informed tactical decisions. Moreover, the trial court stated, "Mr. Logan has employed his method in this court for many years and has always been effective as counsel and extremely successful in his methods."

## II. ANALYSIS

In reviewing the appellant's Sixth Amendment claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective counsel, an appellant "must show that counsel's representation fell below an objective standard of reasonableness" and that this performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88, 692, 694, 104 S.Ct. 2052, 2064, 2067-68, 80 L.Ed.2d 674 (1984); Best v. State, 708 S.W.2d 421, 422 (Tenn. Crim. App. 1985).

---

[2]The supreme court denied permission to appeal on May 4, 1992.

[3]The petition as contained in the technical record is not file-stamped by the clerk of the trial court. This approximate date is based upon the appellant's signature on the petition, which was accompanied by the date of May 28, 1993. We rely upon this date for chronological purposes only.

4

The allegations within a petition must be proven by a preponderance of the evidence.  See McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983).  The most difficult burden on an appellant is demonstrating the prejudice he has suffered by the alleged error.  In order to prevail on that ground, the appellant must show a reasonable probability that but for counsel's error the result of the proceeding would have been different.  Strickland, 466 U.S. at 687-88.  The inability to prove either prong of the Strickland test results in failure of the claim.  Id at 697.

**A. Amendment to Indictment**

Appellant first contends that his counsel was ineffective for permitting the State to amend Count 2 of the indictment on the day of trial without his consent.  The record reflects that Count 2 charged appellant with the aggravated assault of Linda Hall by causing serious bodily injury.  That count of the indictment originally did not allege that the offense was committed "willfully, knowingly, or recklessly, under circumstances manifesting extreme indifference to the value of human life," as required by the statute.  See Tenn. Code Ann. §39-2-101 (Supp. 1988).  Appellant's counsel filed a pretrial motion to dismiss the count, alleging it did not state an offense.  Although the trial court overruled the defense motion, the State acknowledged that the necessary language was missing from the indictment.  After a recess, the assistant district attorney read the indictment to the jury with the necessary language in Count 2.

Later in the trial transcript, the assistant district attorney clarified for the record that appellant's counsel had agreed to allow the State to amend the indictment during the recess and present it to the jury in its amended form.  The record contains no written agreed order on the amendment, nor was the discussion between the attorneys documented in the transcript.

The amendment to the indictment was challenged in the first appeal.  While stating that the record was unclear, this Court nevertheless found the circumstances surrounding the amendment were sufficient to indicate the appellant's consent.  State

5

v. Bud Cash, Jr., No. 286, slip op. at 12 (Tenn. Crim. App. at Knoxville, January 30, 1992). There was no objection to the assistant district attorney's reading the amended indictment to the jury, no objection to the prosecutor's characterization of the discussion during the recess, nor an objection to the jury charge which instructed the jury on the elements of the offense as amended in the indictment. Thus, appellant's consent was implicit. Slip op. at 12.

At the post-conviction hearing, appellant testified that he never consented to the amendment of the indictment, that counsel never asked him if he consented, nor did counsel tell him his consent was required.[4]  Similarly, trial counsel testified that appellant did not consent to the amendment.  However, he stated that he discussed the amendment with appellant and explained the likelihood of the indictment being resubmitted to the grand jury if no consent was given.

Counsel admitted discussing the amendment with the assistant district attorney during a recess, but denied that he gave any affirmative consent to the amendment. He believed that the trial court committed reversible error in overruling his motion to dismiss and that the prosecutor's method of amending the indictment was inadequate. Trial counsel explained his earlier silence by expressing his belief that the Rules of Criminal Procedure required a defendant's affirmative consent, such as an agreed order, before an amendment would be valid.  Without providing such consent, he was certain appellant would prevail on appeal of this issue.  Trial counsel acknowledged that his strategy worked against appellant on appeal, but remained steadfast in his belief.

It is clear from trial counsel's testimony that this tactical decision was an exercise of judgment based upon his interpretation of the rules of procedure. Tennessee Rule of Criminal Procedure 7(b) permits the amendment of an indictment

---

[4]A letter from counsel to appellant dated May 8, 1992, was also introduced at the post-conviction hearing.  With respect to the aggravated assault conviction, it advised appellant of his right to pursue a post-conviction petition based on ineffective assistance of counsel "to the extent that you did not authorize any agreed amendment upon the aggravated assault conviction."

6

at any time with the consent of the defendant. Without consent, however, the court may permit amendment before jeopardy attaches only if no additional offense is thereby charged and no substantial rights of the defendant are prejudiced. Id. It does not appear that counsel made the decision on a whim or because he was uninformed about the applicable procedural rules. We must give deference to tactical decisions if they are informed ones that are the result of adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (citations omitted). See also Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993). The mere fact that in hindsight the tactic was detrimental to the appellant is not sufficient to substantiate ineffectiveness. Hellard, 629 S.W.2d at 9.

## B. Suppression of Statement

Secondly, appellant argues that his trial counsel was ineffective for failing to move for suppression of the statement he gave to law enforcement officials. He testified that he was not advised of his rights before giving his statement and he also stated that trial counsel did not discuss these matters with him. He further testified that immediately prior to being questioned, a detective picked up an ice pick, rolled it in his hands, and told appellant he was facing thirty years. He was then given a waiver of rights form to sign. Additionally, appellant claimed one law enforcement officer testified at the preliminary hearing that he could not remember whether he read appellant his rights before taking the statement.[5]

Trial counsel's testimony on this issue directly conflicts with appellant's. He testified that he and appellant discussed in great detail everything that happened after law enforcement became involved. Appellant never informed him of any coercion by authorities. Counsel summed up his belief by saying "Mr. Cash could not sustain by his own testimony a position that was consistent with a suppression of those

---

[5]The transcript from the preliminary hearing is not included in the record before us. Apart from his own testimony, appellant presented no other evidence of such a statement. Therefore, we are unable to address the veracity of this hearsay allegation.

7

statements." Furthermore, appellant's position all along was that he had nothing to hide and that he was cooperative with law enforcement.[6] Counsel believed a motion to suppress would undermine such a theory.

The trial record indicates that after the victim was discovered at the appellant's home, appellant was arrested, taken to the police station, and read his rights. He executed a written waiver of his rights and gave his statement to officers. At trial, appellant testified consistently with this statement. Appellant's constitutional rights were not violated in this regard. The statement was given voluntarily after appellant had been read his rights. Counsel cannot be faulted for failing to seek suppression where there were clearly no grounds upon which to pursue such a motion. See Hellard v. State, 629 S.W.2d 4, 10 (Tenn. 1982) (finding it was a justifiable decision to not seek suppression of alibi statement where it was clearly admissable).

Although the appellant testified to different circumstances at the post-conviction hearing, the trial court's ruling implicitly accredits counsel's testimony. Upon review, this Court cannot re-weigh or re-evaluate the evidence. We give deference to questions about the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence as they are resolved by the trial court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Appellant has failed to prove this allegation by a preponderance of the evidence.

## C. Suppression of Evidence

Next, appellant contends that two searches of his residence were unconstitutional and that his counsel was ineffective for failing to seek suppression of the evidence obtained during the searches. He alleges that a flashlight and a cash register receipt were outside the scope of the search warrant and were not evidence of a crime. In addition, appellant contends the information in the affidavit supporting the second search warrant was stale and failed to constitute probable cause.

---

[6]Proof at trial, including the appellant's testimony, reflected that when police came to his house inquiring about the victim, he immediately told them she was there and invited them in to see her.

According to appellant, there was no tactical reason for failing to move for suppression.

Several hours after discovering the victim in serious medical condition in the appellant's home, authorities sought a search warrant for the residence. They obtained a warrant authorizing a search of the premises for "evidence of a crime." The evidence seized during this search and admitted at trial included a flashlight, blouse, pants, bra and panties belonging to the victim, and a cash register receipt from a Red Food Store.

The second search warrant was obtained almost three weeks later. On June 15, 1989, officials went to appellant's residence with a warrant seeking only one item: an athlete's "protection cup." The record reflects that appellant was home when officers arrived. Upon informing appellant of their purpose, he retrieved the item and voluntarily turned it over to the officials.

It is important to note that the validity of the search warrants and the constitutionality of the searches are not issues before us. These issues were not raised on direct appeal and must be considered waived. See Tenn. Code Ann. §40-30-112(b)(1) (repealed 1995); House v. State, 911 S.W.2d 705, 714 (Tenn. 1995), cert. denied ___ U.S. ___, 116 S.Ct. 1685,134 L.Ed.2d 787 (1996). Appellant has not alleged that counsel was ineffective for failing to raise these issues on appeal. As a result, we determine only the issue of counsel's ineffectiveness in failing to seek suppression of the evidence.

Trial counsel testified at the post-conviction hearing that he felt a motion to suppress the evidence was inappropriate. After he and appellant discussed the circumstances surrounding the searches, counsel believed appellant had basically consented in each instance. Once again, he emphasized that appellant's cooperation was in keeping with the defense theory. This was further exemplified by appellant's voluntary relinquishment of the only item sought in the second warrant.

9

Considering this testimony and the trial record, it appears that the decision not to contest either search was an informed decision. Counsel discussed the circumstances of each search with the appellant and concluded that appellant had consented to each. Moreover, counsel was convinced that appellant's defense would be bolstered if the jury believed he had cooperated fully with the investigation. A motion to suppress the evidence would have been inconsistent with that defense. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Hence, we grant deference to counsel's tactical decision. Moreover, appellant failed to show that any of the evidence introduced from either search was prejudicial in the sense that the outcome of the trial would have been different. Id at 694.

Appellant also alleges that the second search warrant contained a false statement by law enforcement which provided sufficient grounds for counsel to seek suppression of the evidence. See Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The affidavit supporting the second warrant stated that the protection cup had been observed during the first search, but it "was of no interest at that time." Appellant alleges that this is a false statement and that counsel was ineffective for failing to pursue suppression on this ground.

Counsel testified that he recognized the potential Franks issue in the affidavit. However, he disagreed that this singular issue was sufficient to support a motion to suppress. Moreover, he stated that he decided not to pursue suppression of the cup because it was not credible evidence of a crime[7] and that it was indicative of the weaknesses in the State's case against appellant, which was primarily circumstantial. We do not question counsel's strategical decision.

---

[7]The State's medical expert suggested that the protection cup may have been placed over the victim's nose and mouth during the assault. However, the cup apparently had holes throughout and would have been difficult to facilitate asphyxiation.

**D. Failure to Object**

Appellant's final argument is that counsel was ineffective for failing to object to prejudicial and irrelevant evidence. He lists eighteen specific instances which occurred during the trial. After considering each one, we conclude that appellant is unable to satisfy both prongs of the Strickland test on any of the alleged errors.

We first note that in appellant's brief, he fails to explain the basis for the objection in each instance. He merely lists the evidence or testimony to which an objection should have been lodged, but neglects to say why the evidence was inadmissible. Such conclusory statements without articulated reasons in support generally waives our consideration of an issue. Tenn. Ct. Crim. App. R. 10(6); Tenn. R. App. P. 27(a)(7). Nevertheless, we will address each one briefly.

Counsel did not object to the introduction of the protection cup or an oxygen mask which the State used during trial. He stated that the State's inability to conclusively demonstrate that these items were used to commit the offense indicated the weakness of the State's theory and was not prejudicial to appellant. We grant deference to this tactical decision. Similarly, the State's questioning of one expert witness about the oxygen mask was not prejudicial. Neither do we find the failure to object to a flashlight or the clothing of the victim, both found in appellant's residence and legally seized, ineffective. The clothing was not prejudicial because appellant never disputed that the victim was at his home. As to the flashlight, the State was unable to connect it to the assault. Therefore, it was not prejudicial to appellant.

Pictures of a garbage can containing beer cans found inside the appellant's home were also introduced without objection. Counsel stated that no objection was warranted. The proof at trial, including the appellant's testimony, reflected that on the night of the alleged incident both appellant and the victim had been drinking. In this context, we do not believe the picture was prejudicial.

11

No prejudice arose from the failure to object to alleged hearsay testimony about what the victim was wearing on the night of the incident and her failure to report to work. Appellant did not dispute what the victim was wearing and he admitted calling the victim's workplace to report that she would be unable to work.

An objection to the introduction of a picture of the victim and appellant taken the night of the incident was unnecessary. Appellant testified that he and the victim visited the VFW club that night where the picture was taken. Two brief comments made by the district attorney during examination of the witnesses were not prejudicial.

Testimony that appellant's telephone was unplugged when officers arrived at his home presented no basis for objection. It was not hearsay as the witness observed this firsthand. Neither do we understand how it was prejudicial to appellant. Merely because appellant vouched a contrary position did not make the matter objectionable. Testimony about the victim's personal life, including her previous marriage, custody of children, and her personal habits was not prejudicial because it did not implicate appellant.

Some expert testimony reflected that the victim may have been asphyxiated or strangled. It appears that such testimony was improper because the State dismissed the count of the indictment alleging aggravated assault by strangulation. Nevertheless, we cannot say that counsel's failure to object to one aspect of testimony throughout the course of a two day trial rose to the level of ineffectiveness. The standards employed for determining ineffectiveness do not require perfect representation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

Finally, the State questioned one witness about appellant's drinking habits and whether he became violent when drinking. The record reflects that this witness was called by the defense to attest to appellant's reputation for truthfulness and honesty in the community. It appears that the State's question was improper under the Rules of Evidence. See Tenn. R. Evid. 404 and 608. Regardless, the information was not

prejudicial to appellant. The witness responded that she had never seen appellant violent when he drank alcohol.

Appellant also contends that counsel was ineffective for failing to request a hearing on the admissibility of photographs of the victim offered by the State. He stated at the post-conviction hearing that counsel never discussed this issue with him and counsel did not object to the introduction of any photographs of the victim.

Counsel testified that he had a meeting "off the record" with the trial court regarding the pictures. He characterized this as a "mini Banks hearing." See State v. Banks, 564 S.W.2d 947 (Tenn. 1978). He remembered that the trial court excluded two pictures. Counsel admitted that he should have ensured the Banks discussion was on the record. However, counsel did not believe this prejudiced appellant. Although the pictures were prejudicial to the defense, counsel said that exclusion was unlikely because their probative value was too great.

We agree with counsel's evaluation of the photos. Our review of the photos indicates the high probative value of the pictures. They were indeed essential to the State's case, especially since the victim had no recollection of the events and could not testify about her injuries. Although it would have been preferable for counsel to ensure the record reflected that he took the necessary measures to prevent admissibility, we cannot say this would have altered the outcome of the trial.

**CONCLUSION**

The record fully supports the trial court's determination that counsel was not ineffective. Our review indicates that trial counsel made many difficult tactical decisions in appellant's case and we conclude that his performance was well within the range of competence demanded of attorneys in criminal cases. We are mindful that

> no two lawyers will make the same tactical decisions; each will utilize his own traits of personality, knowledge, and experience to convince the jury. Though all lawyers will try a lawsuit in a different way, this does not

13

necessarily mean that any of them would try it the wrong way. There are no standard procedures for trial lawyers.

<u>Hellard v. State</u>, 629 S.W.2d 4, 12 (Tenn. 1982). Appellant is not entitled to post-conviction relief.

_____
William M. Barker, Judge

_____
Gary R. Wade, Judge

_____
Joseph M. Tipton, Judge