**STATE of Tennessee, Appellee,**

v.

**Bud CASH, Jr., Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 22, 1993.

James F. Logan, Jr., Cleveland, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Rebecca L. Gundt, Asst. Atty. Gen., Nashville, Rebble Johnson, Asst. Dist. Atty. Gen., Cleveland, for State of Tenn.

## OPINION

WADE, Judge.

The defendant, Bud Cash, Jr., appeals from the trial court's order reinstating his conviction for aggravated kidnapping and ordering his sentences for aggravated assault and aggravated kidnapping to be served consecutively.

The defendant presents the following issues for review:

(1) whether the trial court failed to charge the jury on the offense the state had elected to submit to the jury;

(2) whether the trial judge erred by refusing to recuse himself from further proceedings in this case; and

(3) whether the trial court improperly sentenced the defendant consecutively.

We find error; because the charge in the indictment had been dismissed by the state before its submission to the jury, the conviction for aggravated kidnapping is reversed.

Some background information is in order. Convicted for assault with intent to commit voluntary manslaughter, aggravated assault, and aggravated kidnapping, the defendant was sentenced as a Range I, standard offender to consecutive terms of two, six and twenty years, respectively. On direct appeal, this court upheld the conviction for aggravated

assault but reversed and dismissed the assault with intent to commit voluntary manslaughter conviction on constitutional principles:

> Without sufficient evidence that separate assaults occurred and without a record from which it can be determined that separate assaults resulted in separate convictions, double jeopardy prevents the double convictions. The conviction for assault with intent to commit voluntary manslaughter should be dismissed as merged with the aggravated assault conviction.

*State v. Bud Cash, Jr.,* No. 286, 1992 WL 13905, at * 11 (Tenn.Crim.App., Knoxville, January 30, 1992). Further, the conviction for aggravated kidnapping was reversed and remanded to the trial court for a determination of whether the specific count of aggravated kidnapping upon which the defendant was convicted had been previously dismissed at the election of the state. Finally, our opinion directed the trial court to consider whether or not the sentences for aggravated assault and aggravated kidnapping should be served consecutively.

On February 14, 1992, without further notice, argument, proof, or hearing, the trial court entered an order finding that the altered indictment form, a copy of which was included in our court's opinion, had actually not been submitted to the jury [1]; the order reinstated the defendant's conviction for aggravated kidnapping. At the sentencing hearing scheduled two weeks later, the trial court overruled a motion for an evidentiary hearing on the indictment issue but heard a tender of proof by the defense.

## I

Originally, the indictment charged two counts of aggravated kidnapping. Apparently, during the course of the trial, the state announced its intention to elect as to which of the two charges to submit to the jury. The defendant contended in the original appeal and continues to assert now that the trial court erred by failing to charge the jury upon the offense the state chose for resolution.

Indicted by the Bradley County Grand Jury on a five-count indictment in August of 1989, the charges against the defendant were as follows:

> *Count 1.* Assault with intent to commit murder in the first degree;
>
> *Count 2.* Aggravated assault resulting in a head injury;
>
> *Count 3.* Aggravated assault resulting in hypoxic damage secondary to strangulation;
>
> *Count 4.* Aggravated kidnapping resulting in *serious bodily injury;*
>
> *Count 5.* Aggravated kidnapping (*victim of a felony,* to-wit: assault with the intent to commit murder in the first degree or aggravated assault).[2]

Before the trial began, the state specifically elected not to proceed on count three. Then the state read the remaining four counts (as amended) to the jury, referring to the aggravated kidnapping counts as three and four rather than four and five:

> Count number four is an alternate count also charging aggravated kidnapping. They're alternate, not two counts, Your Honor. I told counsel I would explain that before I read it.

At the end of the state's case-in-chief, the following colloquy occurred:

> MR. LOGAN: As the Court is probably aware, we would move the Court at this point for a judgment of acquittal upon the first count and the third counts as they will be, as under our announcement presented

---

**1.** The altered indictment, with certain of the counts crossed out, actually appears in the record in the original appeal. If an appellee deems it necessary to amend or modify a transcript, he has 15 days within which to file objections with the clerk. Any differences are generally resolved in the trial court. Tenn.R.App.P. 24(b) and (e). The trial judge has the duty to approve the transcript. If that is not done, the transcript is deemed to have been approved and "shall be so considered by the appellate court." Tenn.

R.App.P. 24(f). Here, the trial judge approved the transcript filed with the original appeal on July 5, 1990. We note that there is no longer a distinction between the "technical record" and the "bill of exceptions."

**2.** In order to avoid confusion, we have chosen to refer to the counts as they were originally numbered through this opinion.

to the jury. What I understand to be the first and the fifth count....

GENERAL JOHNSON: It'd be one, two, and five.

MR. LOGAN: Yes, the first and the fifth counts of the indictment....

THE COURT: One, two, and five, so why are you saying the third? He's not proceeding on the third.

MR. LOGAN: I understand that. What I said the third would be the third remaining count....

THE COURT: Oh, I see.

MR. LOGAN: What was originally the first count.

THE COURT: Right, so you're talking about one, two and five.

MR. LOGAN: One, two, and five, right, but I'm only talking about one and five, one and five. And the reason is because of the proof at this point is not such that those issues should be submitted to the jury. We previously of course have made motions with reference to the second second count of the indictment. We'd stand on those motions.

THE COURT: Overruled.

In the previous appeal, Judge Joseph M. Tipton wrote for a panel of this court:

> This discussion could indicate that the state had elected not to proceed on counts three and four of the indictment. However, defense counsel's comment about the previous announcement to the jury can only refer to the state's statement during the reading of the charges in which it referred to the two counts charging aggravated kidnapping as "alternate, not two counts." This could mean that the allegations contained in counts four and five of the indictment were to be merged into one count as alternative allegations.

1992 WL 13905 at * 8.

At the close of all the proof, the defendant made a general motion for judgment of acquittal. The trial court stated that the motion "on each count, that is *which I will renumber as one, two, and three,* is overruled" (emphasis added). During the conference regarding jury instructions, the trial court announced that it would provide instructions on the aggravated kidnapping charge:

> And then the State, to reiterate, General, is proceeding on count one, count two, and count three, and *I'm renumbering those. And I'm going to give the jury a copy of the indictment.*

(Emphasis added.)

The state argued in its closing argument as follows:

> The State is asking you to return a verdict of guilty on all counts, not only the attempted murder and the aggravated assault, but also this aggravated kidnapping....
>
> Ladies and gentlemen, it is the State's position she was also kidnapped, and *during that kidnapping, she suffered obviously a felony, either an aggravated assault or attempted murder.*

(Emphasis added.)

In instructing the jury, the trial court defined aggravated kidnapping in terms of count four of the original indictment, the aggravating element being serious bodily injury. The jury charge made no mention of the aggravating element (the commission of a felony) during the kidnapping as alleged in count five; there was no reference to either assault with intent to commit murder or aggravated assault, either of which would have qualified as the felony required to make the kidnapping an aggravated one.

In the initial order after the remand from this court, the trial court specifically held as follows:

> The Court of Criminal Appeals decision sets out a copy of an indictment as it appears in Minute Book 103 at Page 429. The reproduction in the Appeals Court decision and in the technical record is not correct....
>
> Prior to trial, Count 3 of the indictment was dismissed with the result that the case went to trial on Counts 1, 2, 4 & 5. The Counts were read to the jury as being Counts 1, 2, 3 & 4.
>
> *Despite a diligent search the Court has been unable to find a copy of the indictment submitted to the jury, if indeed a*

*copy [was] in fact submitted.* If a copy of the indictment [was] in fact submitted to the jury, it most assuredly would have been a reproduced copy omitting the crossed out Count and the Count (Count 3) upon which the Defendant was not tried. This conclusion is buttressed by the Court's opinion that any competent counsel, and Mr. Logan is competent, would have violently objected to a crossed out indictment being submitted to the jury, particularly where it included a charge upon which the Defendant had not been tried (original Count 3) or would have moved for a mistrial upon its submission to the jury; or would have asserted same as a basis for a new trial because of its possible prejudicial effect upon the jury.

Although there appears to be some confusion in the record as to whether the State elected to have the case submitted to the jury on either Count 4 or 5 (renumbered 3 and 4), *it is the Court's recollection that in an off the record discussion with both counsel the State indicated that it wanted to proceed on Count 3 (original Count 4).* Based upon the Court's understanding that the State wanted to proceed under Count 3, the Court chose to and did in fact submit the case to the jury on original Count 4, which the Court referred to as Count 3, and furnished written instructions to the jury accordingly. Based upon these instructions, the jury found the Defendant guilty of kidnapping involving serious bodily injury. That the jury carefully scrutinized and meticulously followed and applied the Court's instructions is compellingly demonstrated by the jury finding the Defendant not guilty of assault with intent to commit first and second degree murder but guilty of assault with intent to commit voluntary manslaughter. It is to be noted that neither counsel for the defense nor the State entered any objection to the Court submitting to the jury the kidnapping Count involving serious bodily injury and specifically declined the Court's invitation for additional instructions. From this, the Court concludes that both the State and Defendant were satisfied with the instructions the jury received with respect to the kidnapping charge it was to consider.

Accordingly, the Court has determined that original Count 4 (renumbered 3) of the indictment was not dismissed, intentionally or inadvertently, but instead was submitted to the jury on proper written instructions. Based upon these instructions, the jury returned a verdict finding the Defendant guilty of original Count 4 (renumbered 3).

It is therefore ORDERED that the Judgment of the Court with respect to the Defendant's conviction for aggravated kidnapping involving serious bodily injury is hereby reinstated, this 14th day of February, 1992, nunc pro tunc the 9th day of March, 1990.

(Emphasis added.)

At the sentencing hearing on February 28, 1992, the defendant sought an evidentiary hearing on the questions remanded by this court's original opinion for resolution in the trial court:

MR. LOGAN: Your Honor, please, on behalf of the defendant Mr. Cash, let me advise the Court that, as the Court knows, we have filed a motion concerning the Court's order entered ... apparently on February the 14th, seeking a hearing upon the issues determined by that order, and asking the court to set aside that judgment that was entered at that time and provide for a hearing upon matters that the Court decided on that date....

THE COURT: I've read the order, Mr. Logan, and for your edification, you indicate in here that the Court made a decision as a result of an independent investigation. The Court made no investigation. "The defendant was not advised of any persons consulted." No persons were consulted. The only thing I did was review the record in the case....

MR. LOGAN: Your Honor, please, I ...

THE COURT: ... out of the Court of ... [Criminal] Appeals, and therefore, neither you nor the defendant was denied any right to confront any witnesses, because no witnesses were confronted. Therefore, your motion to set aside that order is hereby denied.

MR. LOGAN: Your Honor, please, I would pray an evidentiary hearing upon the motion and advise the Court that I have consulted with Mr. Johnson, and which he advised me that he was consulted by your Honor with reference to the matters that are decided by the Court's judgment.

GENERAL JOHNSON: Your Honor, what I told, counsel's correct. I told Mr. Logan, and I'll go on record as saying I did tell the Court that I did not remember which count I had elected from....

The trial court then made the following observation:

My recollection is the only conversation I had with Mr. Johnson with respect to this case is when I got the Court of [Criminal] Appeals decision in, it included in the, in the opinion a copy of an indictment, which according to the Court of [Criminal] Appeals decision, was reportedly submitted to the jury. Mr. Johnson happened to be in my office or somewhere around, and I asked him where this came from, and my recollection was he didn't know. So then I went and got the record from the Court of [Criminal] Appeals. That was the extent of it.

The trial court denied the defendant's motion for an evidentiary hearing and the motion to set aside the prior order. After the trial court granted the defense request for a tender of proof, the assistant attorney general was asked to testify. He recalled that he did elect to proceed on only one count:

I did not remember which count I had elected from.... I wish I could stand up here today and say I have an absolute perfect memory on this thing....

Closing arguments were not made a part of the original record. They appear in this supplemented record, however, and confirm that the state argued the commission of a felony as the aggravating element, i.e., aggravated assault or assault with intent to commit murder.

Defense counsel also made a tender of proof. He stated that at the conclusion of the state's case the assistant district attorney general had advised him that he was going to elect between counts four and five. He testified that the assistant district attorney general notified the court that he intended to elect and asked the trial judge to strike from the presentation to the jury counts three and four of the indictment. Defense counsel further stated that he saw a copy of the indictment, the same that was made a part of the record in the original appeal, where those counts had been stricken by the court.

The trial court rejected defense counsel's assertion and denied that he (the judge) struck through certain counts in the indictment. Later, in regard to the copies of the indictment found in the court file, the trial judge observed as follows:

I think this young lady right here can verify my questioning the people over there [clerk's office] as to why one, the word three on one of them was written and one of them was printed....

Defense counsel's request to question the jurors about their recollection was denied.[3]

On March 3, 1992, the trial judge, after a weekend which included listening to tapes of the trial, reconsidered his actions of February 28, called in counsel for the state and the defense, and concluded that he had, in fact, given the jury a copy of the indictment:

Based on what I said, I did give the jury a copy of an indictment, but not the one that you insist that I gave them....

Suppose at the end of the State's proof, the State says, "We elect to go on count one," that is, aggravated assault involving serious bodily injury. Now keep this in mind. The State cannot dismiss a count without approval of the Court. If the Court charges on count one, that is, aggravated assault involving serious bodily injury, that has the effect of dismissing count two. If the Court charges on count two, that has the effect of dismissing count one....

---

3. On March 3, 1992, the trial court advised counsel for the state and the defense that he was reversing his decision not to let counsel talk with the jurors in this case. He noted that the jurors had completed their jury duty and that he could not prevent counsel from speaking with the jurors. He stated that it was immaterial whether the state elected one count or the other because his instructions on one count had the effect of dismissing the other count.

Suppose I'm sitting up here working on my instructions, and I say to myself, "this is not a case of aggravated assault involving serious bodily injury, because the proof in this case was that the defendant shot the victim, but the victim received only a minor flesh wound." So I say to myself, "the State screwed up." So I elect to charge the jury on count two and not count one. And in this particular case I furnish the jury appropriate instructions on aggravated assault by the use of a deadly weapon. In my view, I have the authority to do this, because of my obligation to see that justice is done. I'm not sitting up here as a potted plant, and I'm not bound by the State's inadvertence or mistake or ineptness, whichever you want to call it. I too am a participant in the case. And when I do such a thing as this, I do not consider that I have taken over the prosecution of the State, but instead I have simply corrected a mistake on the part of the State. Now the point I'm trying to make with respect to the Cash case is simply this: *if the State through inadvertence or a mistake chose to go on the kidnapping charge involving the commission of certain felonies, and I gave the jury instructions on kidnapping involving an aggravated assault, ... and the jury found the defendant guilty of that offense, in my view, that is solid as a rock.*

(Emphasis added.)

■ With this factual background, we will first consider the timing of the orders entered by the trial court in February and March of 1992. Tenn.R.App.P. 42(a) provides that the Court of Criminal Appeals' clerk "shall transmit to the clerk of the trial court the mandate of the ... Court of Criminal Appeals, *with notice to the parties,* 31 days after entry of judgment ..." (emphasis added). Tenn.R.App.P. 43(c) states that when "the appellate court remands the case for a new trial or hearing *and the mandate is filed in the trial court,* the case shall be reinstated therein and the subsequent proceedings conducted after at least 10 days notice to the parties" (emphasis added).

The previous opinion of this court was filed on January 30, 1992. Before the trial court

received the mandate and without notice to the parties, the trial court reinstated the aggravated kidnapping conviction on February 14, 1992. Neither counsel was advised of any action of the trial court until they received copies of the order. Meanwhile, counsel for the defendant had timely filed a Tenn. R.App.P. 11 application, seeking review by the Supreme Court of this court's decision. That application was denied on May 4, 1992, and the mandate from our court was finally transmitted to the trial court on May 14, 1992. At the time the trial court entered its order on the remand, it had no jurisdiction to act. The case was still in the appellate process. In consequence, the February 14, 1992, order was premature and, therefore, a nullity. *See* Order, *James W. Dash v. State,* No. 1088, 1989 WL 76315 (Tenn.Crim.App., Knoxville, July 14, 1989). The same is true in respect to the sentencing ruling on February 28 and the trial court's reconsideration order entered March 3.

The transcript of the trial's closing arguments was filed as a supplemental record to this appeal on July 17, 1992. During its summary argument, the state asked the jury to return a verdict of guilt against the defendant for aggravated kidnapping in the commission of a felony (the original count five). There was no mention of count four where the aggravating element was alleged to be serious bodily injury. This evidence, along with the unqualified statement by the prosecutor that he did elect to prosecute only one of the two aggravated kidnapping counts, convinces us that the trial court inadvertently charged count four (original numbering) rather than count five.

■ In a situation where there are alternative charges, the state has the obligation at the close of its proof to elect a particular offense upon which it will rely for a conviction. There are three fundamental reasons:

(1) to enable the defendant to prepare for and make his defense for the specific charge;

(2) to protect the defendant from double jeopardy by individualization of the issue;

(3) to avoid a verdict where some jurors vote to convict on one count in the indictment and other jurors vote to convict on another.

*Jamison v. State,* 117 Tenn. 58, 94 S.W. 675 (1906); *Burlison v. State,* 501 S.W.2d 801 (Tenn.1973). In cases involving any possibility that a conviction might occur as a result of different jurors concluding that the defendant committed different acts, each of which separately shows the commission of offense, the trial court has the obligation to insure that the jury understands its duty to agree unanimously on a particular set of facts. *State v. Brown,* 762 S.W.2d 135 (Tenn.1988).

 An election by the prosecution to stand on one count has the effect of eliminating the other count. *Wharton's Criminal Procedure* § 288 (C. Torcia ed. 13th ed. 1990). In *McKeel v. State,* 156 Tenn. 331, 1 S.W.2d 784 (1928), our Supreme Court held that an action of the district attorney in electing to rely upon a particular count in a multi-count indictment resulted in a dismissal of all other charges. *Id.* at 785. More recently, our Supreme Court implicitly held that an election by the state to proceed on a charge of felony murder rather than a count alleging first degree murder (requiring proof of the statutory elements) effectively dismissed the latter count. It described the action as "the state's prerogative." *State v. Harrington,* 627 S.W.2d 345 (Tenn.1981).

A more recent, unreported opinion from our court relied upon *McKeel* in reaching its result:

> [T]he defendant's conviction cannot be predicated on count two of the indictment, because after the State elected to proceed only on count one, then count two was no longer on trial for resolution by the jury. *McKeel v. State,* 156 Tenn. 331, 1 S.W.2d 784 (1928). Since the trial court granted a judgment of acquittal on the only count (count one) that was on trial and count two had been abandoned, then there was nothing left for the jury to decide.

*State v. Ronald Parchman,* No. 87–78–III, 1987 WL 28033, at * 1 (Tenn.Crim.App., Nashville, December 18, 1987).

 By the application of these principles to the facts here, it is apparent that the state, as was its prerogative, elected to dismiss count four (original numbering) and to prosecute on count five (original numbering). Unfortunately (but completely understandable because of the repeated renumbering of the counts in the indictment), the trial court, whether planned or inadvertent, provided jury instructions on count four; there were no instructions on count five. Our conclusion that count four had been dismissed is inescapable due to the content of the state's closing argument. We were unable to make a more definite determination in the prior appeal because the closing arguments were not a part of the record on that appeal.

In consequence, we are constrained to reverse the conviction for aggravated kidnapping based upon count four. Stated simply, that charge had been dismissed when the state elected to proceed on count five of the indictment. In any event, the trial court was without jurisdiction to act upon the remand in February and March of 1992.

## II

The defendant also argues that the trial court erred in failing to recuse himself after the remand by our court. Although the orders entered were nullities, we have nonetheless examined the merits of this claim. On February 28, the defendant requested recusal. During the sentencing hearing on that date, the defendant testified on his own behalf. At the conclusion of his testimony, the state announced that it had no questions. The trial judge then undertook to question the defendant about his prior convictions. Defense counsel objected to questions about a 1974 assault conviction which had been declared "void on its face" (for lack of signature by a judge) in this court's earlier opinion and sought a recusal. The trial judge denied the motion for recusal determining that he could be fair. The defendant alleges in this appeal that because the trial judge had conducted an independent investigation and had *ex parte* discussions with the assistant district attorney general about the indictment issue, he could not be impartial.

■ The standard of review is whether the trial court abused its discretion by denying the motion. *State ex rel. Phillips v. Henderson*, 220 Tenn. 701, 423 S.W.2d 489, 492 (1968); *Wiseman v. Spaulding*, 573 S.W.2d 490, 493 (Tenn.App.1978). The general rule is that a trial judge should recuse himself whenever his impartiality can reasonably be in question. *Lackey v. State*, 578 S.W.2d 101, 104 (Tenn.Crim.App.1978); Sup. Ct.R. 10, Canon 3(C)(1).

■ Rule 10, Canon 3(A)(4) of the Rules of the Supreme Court, provides as follows:

A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding....

The record establishes that the trial court spoke directly with the assistant district attorney general about the specific factual issue remanded for resolution. Defense counsel was neither notified nor present. The Commentary following the Canon provides that the proscription against communications includes the lawyers in the proceeding. Thus, the trial judge should not have discussed factual matters subject to future resolution with a prosecutor in the case.

The record also establishes that the trial judge made a fact-finding trip to the office of the Supreme Court Clerk in Knoxville. When he did so, the trial judge became, in effect, a witness and lost his status as a neutral and detached arbiter. The trial judge, in our view, not only gained "personal knowledge of disputed evidentiary facts concerning the proceeding" but also apparently made a pre-determination of the central issue. Sup.Ct.R. 10, Canon 3(C)(1)(a). Moreover, the nature of the trial court's interrogation of the defendant during the sentencing hearing hinted strongly at "bias or prejudice...." Sup.Ct.R. 10, Canon 3(C)(1)(a). The state had declined its opportunity to cross-examine the defendant. The trial judge's dissatisfaction with our court's earlier declaration that the 1974 assault conviction was void was apparent.

In 1928, Chief Justice Benjamin Cardozo of the New York Court of Appeals noted as follows:

The function of judges is to determine controversies...." They are not adjuncts or advisors, much less investigating instrumentalities.... The judge is ... [not] a prosecutor.... He is [not] to follow trails of suspicion, to uncover hidden wrongs, to build up a case as a prosecutor builds one.... [H]is conclusion is [not] to be announced upon a case developed by himself.

*In re Richardson*, 247 N.Y. 401, 160 N.E. 655 (1928) (citations omitted).

We point out that the state presented a particularly strong case even though it was based primarily upon circumstantial evidence. The victim was disabled at the time of the trial and had no recollection of the extent of her relationship with the defendant, much less the facts in the case. The assault was brutal. The nature of her injuries was extensive. If guilty of aggravated kidnapping, the defendant's conduct warranted the maximum penalty possible. Yet the chore of the judiciary is to preserve and maintain the independence of the office and to perform its duties without the appearance of partiality. Sup.Ct.R. 10. While we find that the trial judge here acted in accordance with the highest principles of his office at trial, we must conclude that there was an appearance of partiality subsequent to our remand. Accordingly, the trial judge should not take part in any further proceedings in this cause.

### III

The defendant contends that the trial court failed to properly implement statutory sentencing guidelines. At the hearing, the question of consecutive or concurrent sentencing was presented to the trial court based upon the facts that had been previously submitted. The only additional evidence came from the defendant.

■ When a challenge is made to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a "de novo review ... with a presumption that the determinations made by the

**750**

court from which the appeal is taken are correct." Tenn.Code Ann. § 40–35–401(d). Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103, and –210.

The trial court reaffirmed the sentences of six years for aggravated assault and 20 years for aggravated kidnapping and ordered the sentences to be served consecutively, based upon the finding that the defendant was a dangerous offender whose behavior indicated little or no regard for human life. The trial court held that the evidence clearly supports the conclusion that the defendant had "no hesitation in committing a crime to which the risk to human life was high, and that [his] treatment of the victim in this case was shockingly cruel and inhumane."

Tenn.Code Ann. § 40–35–115(b)(4) provides that a trial court may order consecutive sentencing if it finds by a preponderance of the evidence that the defendant is a dangerous offender "whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high."

The trial court made the following observations:

> In my opinion, the brutality of the beating that you inflicted upon Linda Hall can lead only to the conclusion that in certain instances, and certainly it was in this case, your rage can and does rise to the level of totally depriving you of rational thought, and that a person of such total irrationality is a threat to society. It's obvious to me that your disposition and your mentality are such that if something triggers you off, you lose all sense of reasoning, and become as dangerous as an uncaged wild animal. *So I find that you are a threat to society.*

(Emphasis added.)

The record clearly demonstrates the accuracy of these observations. Consecutive sentences would have been warranted. By the application of the appropriate factors, we repeat our approval of the maximum sentence for the aggravated assault conviction. Because, however, the defendant's conviction for aggravated kidnapping has been reversed, the issue of consecutive sentencing is moot at this time.

SCOTT, P.J., and CRAWFORD, Special Judge, concur.