IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 15, 2001 Session

## JESSE C. MINOR by and through counsel, Hal Hardin v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 97-C-2096(A)     Cheryl Blackburn, Judge**

---

**No. M2001-00545-CCA-R10-PC  - Filed December 5, 2001**

---

We accepted this extraordinary appeal, *see* Tenn. R. App. P. 10, to review certain pre-hearing actions of the Davidson County Criminal Court in this post-conviction case. Our grant of review extends to these issues: (1) whether a "next friend" may file a post-conviction petition on behalf of an incompetent prisoner; (2) if so, may the post-conviction court, *sua sponte*, order a mental evaluation of the prisoner or conduct other inquiries into the matter to determine whether the "next friend" petition was properly filed on the prisoner's behalf; and (3) whether the court below properly denied the petitioner's motion for recusal. We conclude that we improvidently granted extraordinary review in part, but we otherwise affirm the rulings of the lower court and remand for further proceedings.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed and Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

J. G. Mitchell, III, Murfreesboro, Tennessee, and Hugh C. Howser, Jr., Nashville, Tennessee, for the Appellant, Jesse C. Minor.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Facts and Procedural History

An understanding of the procedural history of this case is essential to comprehending the outcome of this appeal. Equally critical is an understanding of the various representative capacities of the involved parties and of counsel.

In 1997, the petitioner was charged with three counts of rape of a child, two counts of aggravated sexual battery, and one count of aggravated assault. *See State v. Jesse Cleo Minor*, No. M1998-00424-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App, Nashville, Dec. 15, 1999). Pursuant to settlement with the state, Minor entered a best-interest guilty plea on May 21, 1998 to one count of attempted rape of a child and received an eight-year, Range I sentence. The remaining charges were dismissed. At a sentencing hearing, the trial court imposed incarceration as the manner of service of the sentence. *Id.* On direct appeal, we affirmed the trial court's denial of probation. *Id.*, slip op. at 4-8.

The mother of the minor victim in the criminal case filed a civil lawsuit in the Davidson County Circuit Court against the petitioner, his wife, and his co-defendant, Stephanie Patton, in the criminal case. The lawsuit alleged sexual assault of the daughter and sought the award of money damages. *Alana Dowell v. Jesse C. Minor*, No. M2000-00378-COA-R9-CV, slip op. at 2 (Tenn. Ct. App., Nashville, Apr. 26, 2000).

A review of the record in this case, which contains discovery material from the civil case that is exhibited to the post-conviction petition, along with the court of appeals' opinion in the civil case, reflects the involvement of several attorneys in the civil case. Although the information is not entirely consistent, the following appearances of counsel are reflected at various stages of those proceedings. Attorneys Hal D. Hardin and Hugh C. Howser, Jr. have appeared for Mr. Minor in the civil case. Attorneys Howser and Kenneth Mark Bryant have appeared for Mrs. Minor, the petitioner's wife, and Leann Morrison, the petitioner's daughter and guardian *ad litem* in the civil case. In one proceeding, Attorneys Howser and Hardin are reflected as appearing for "the defendants," which technically would include the co-defendant from the criminal case, Ms. Patton, as well as Mr. and Mrs. Minor. It further appears that Attorneys Howser and Bryant practice in the same law firm.

On February 2, 2000, the petitioner, by and through his "next friend," Leann Morrison, filed a petition for post-conviction relief. This pleading was filed by attorney J.G. Mitchell, III as counsel of record. The post-conviction court dismissed this petition as prematurely filed.[1] Apparently, no appeal of that dismissal was taken.

On April 20, 2000, the petitioner, through Ms. Morrison as "next friend," again filed a petition for post-conviction relief. Attorney Mitchell filed this action as counsel of record. The state moved to dismiss the petition, arguing that the petition was improperly filed through a "next friend," that the petitioner was at that time incompetent to maintain the action, and that the statute of limitations would be tolled during the petitioner's incompetency. Although a written order of that dismissal does not appear in the record, the court minutes reflect that the state's motion to dismiss was granted on June 30, 2000. Other information in the record indicates that the basis for that dismissal was the petitioner's "next friend" status, which the trial court ruled was not a permissible

---

[1] Curiously, the court also found that the petition was not timely filed. It appears, however, that the petition was premature, not untimely.

manner in which to bring a post-conviction action. As with the previous filing, it appears that no appeal of the dismissal was taken.

On July 13, 2000, the petitioner filed a third petition for post-conviction relief styled "Jesse C. Minor, individually, and by and through counsel, Hal D. Hardin v. State of Tennessee." Attorney Mitchell filed this action as counsel of record. This pleading alleges that the petitioner was assisted in preparing it by Attorneys Hardin, Howser, Mitchell, Bryant, and Paige Abernathy Hill. Attorneys Hardin, Howser, Mitchell, and Hill have at some point signed post-conviction pleadings found in the appellate record, and all four have listed themselves as counsel of record on the petitioner's appellate brief. Attorneys Howser, Bryant, and Hill all practice in the same firm, members of which have represented the petitioner, his wife, and his daughter in the civil action.

This third petition alleges that the petitioner is in poor health and suffers from irreversible dementia that seriously affects his cognitive abilities. The petitioner attacks his attempted rape of a child conviction based upon four allegations: (1) he was incompetent and unable to understand the prior proceedings and therefore incapable of entering a voluntary guilty plea; (2) the state failed to disclose material exculpatory evidence; (3) false and/or materially misleading statements were offered to the trial court by the victim and her mother; and (4) trial counsel did not provide effective assistance. Based upon statements in the record, at least one of his attorneys believes that a post-conviction petition successful in overturning the guilty plea that underlies the petitioner's conviction will positively affect the civil litigation. *See* Tenn. R. Evid. 803(22) (judgment of previous conviction exception to hearsay rule). *But cf.* Tenn. R. Evid. 410(2) (*nolo contendere* plea is inadmissible against party who made it); *Helen Bell v. Tennessee Farmers Mut. Ins. Co.*, No. 01A01-9802-CV-00079 (Tenn. Ct. App., Nashville, Jan. 22, 1999) (although court declined to rule on admissibility of best-interest plea of guilty to facilitation of arson in civil case seeking recovery for loss under homeowner's policy, it held that plea did not, as a matter of law, preclude insured's recovery on policy that excluded losses occasioned by action by or at the direction of the insured).[2] In any event, should the petitioner ultimately be granted the relief requested in his post-conviction petition, he would face criminal charges more numerous and a potential effective sentence of much greater length than the one conviction and sentence he presently has.

A hearing on the merits of the post-conviction case was scheduled for October 11, 2000. At the beginning of that hearing, the trial court expressed concerns that the petitioner's attorneys in the post-conviction case had conflicting interests due to their representation of the petitioner and various family members in the civil proceeding. Attorneys Hardin and Howser acknowledged involvement in the civil case. Attorney Mitchell admitted that, although he did not represent a party in the civil case, he had attended and observed a civil deposition of the victim in order to observe her demeanor because he and Attorney Hardin thought it was a "good idea." It is apparent from the record that the lower court was concerned that the petitioner's best interests in the

---

[2]It is unnecessary for us to determine whether counsel's belief regarding the best-interest plea's effect on the civil litigation is well founded. Accordingly, nothing in this opinion should be construed as addressing the actual admissibility of the petitioner's best-interest guilty plea in the collateral civil litigation.

civil case and criminal case were divergent. Specifically, the relief sought in the post-conviction case, setting aside of the conviction and judgment, although possibly beneficial to the petitioner's interests in the civil case, might ultimately result in the imposition of multiple convictions and a much greater effective sentence in the criminal case. Because of these divergent interests, the lower court perceived that the petitioner's counsel, if the same in both proceedings, would have conflicting interests in the two actions. Based upon this concern, the lower court expressed its intent to appoint an attorney *ad litem* and order an independent evaluation of the petitioner to determine his competency to choose counsel and strategy in the post-conviction case.[3] The record reflects that the court entered a written order for the petitioner to be evaluated. Apparently, the court also entered an order appointing Attorney Jeffrey Loy as attorney *ad litem* to assist with the mental evaluation, although this order is not in the appellate record certified to us by the clerk of the lower court.

On October 21, 2000, the petitioner filed a motion to reconsider the orders appointing the attorney *ad litem* and requiring the mental evaluation. Curiously, the caption of this pleading styled the case "Jesse C. Minor, *b/n/f Leann Morrison* and by and through counsel, Hal Hardin v. State of Tennessee." (Emphasis added.) This was the first attempt to inject Ms. Morrison as "next friend" into the third petition for post-conviction relief.[4] A memorandum accompanying that motion complained of the trial court's "previous ruling"[5] that Ms. Morrison could not proceed as "next friend." Following a hearing, the court denied this motion to reconsider by written order on December 4, 2000.

On or about December 7, 2000, petitioner's counsel sent a letter to the trial judge requesting that she recuse herself because she had served as an assistant district attorney at the time of the offense to which the petitioner eventually pleaded guilty, and there was an appearance of impropriety and a question of perceived bias.[6] The lower court entered an order on December 12, 2000 denying the request for recusal and amended that order on December 14, 2000. As a factual predicate for its denial, the judge found that she had no role in her former employment in the investigation, indictment and prosecution of the petitioner's underlying case. Further, she found that the indictment was not returned until over one year after her appointment to the bench.

---

[3]The petitioner's competence to choose counsel would necessarily entail his ability to waive the conflict of interests that the lower court perceived.

[4]From this point in the post-conviction litigation forward, the petitioner's filings have utilized the caption he adopted in this motion.

[5]The motion does not specify the date of the order regarding the "next friend" issue. Review of a memorandum filed by the petitioner with the motion indicates the order of which the petitioner complains is that of June 30, 2000, when the court dismissed the second petition for post-conviction relief. As we have noted, the dismissal was not appealed and apparently became a final order.

[6]Although this letter appears to have been filed with the clerk of the lower court, it has not been included in the appellate record. The information we have about this letter comes from the lower court's order denying the relief the letter requested.

The petitioner filed a motion in the lower court for certification of an interlocutory appeal. *See* Tenn. R. App. P. 9 (interlocutory review by permission of the trial and appellate courts). Although this motion is not preserved in the appellate record in its entirety,[7] evidently the petitioner sought review of the trial court's rulings that Ms. Morrison could not proceed as the petitioner's "next friend," appointing the attorney *ad litem*, and ordering the mental evaluation.

The petitioner then followed up with a motion for recusal on January 10, 2001. This motion raised three bases for recusal: (1) the appearance of partiality due to the trial judge's former employment in the district attorney's office; (2) the appearance of bias because the trial judge met with one of the petitioner's potential witnesses in chambers without the parties or counsel being present; and (3) the trial judge conducted an investigation into the court records of the collateral civil proceedings.

On March 7, 2001, the trial court denied both the petition for interlocutory appeal and the motion for recusal. On that same date, the petitioner filed an application for extraordinary appeal with this court. *See* Tenn. R. App. P. 10. We granted the application to review three issues:

(1)    Whether a "next friend" may file a petition for post-conviction relief on behalf of an incompetent prisoner;

(2)    If so, may a trial court, *sua sponte*, order a mental evaluation of the prisoner or conduct other inquiries into the matter to determine whether the "next friend" petition was properly filed on the prisoner's behalf; and

(3)    Whether the trial judge in this case properly denied the petitioner's motion to recuse.

The parties have submitted their briefs and oral arguments, and the case is now before us for disposition.

**I**

The first issue upon which we accepted review of this case is whether a "next friend" may file a post-conviction petition on behalf of an incompetent prisoner. This issue pertains to the petitioner's complaint that the trial court prevented his daughter, Ms. Morrison, from maintaining the action as his "next friend." Upon consideration, we conclude that we improvidently granted extraordinary review of this question, as it is not justiciable in this case.

The first two post-conviction actions were brought by Leann Morrison as "next friend" of the petitioner. Both of those petitions were dismissed, and in neither case does a notice of appeal appear to have been filed. *See* Tenn. R. App. P. 4 (notice of appeal must be filed within 30 days after entry of judgment).

---

[7] Page twelve of this motion is absent from the appellate record.

The third and present action was filed, "Jesse C. Minor, individually, and by and through counsel, Hal D. Hardin v. State of Tennessee." The allegations of the petition include claims that the petitioner himself is incompetent to bring the action on his own behalf and that his attorney, Mr. Hardin, is filing the action on his behalf. The allegations make it clear that Mr. Hardin is acting in a representative capacity. We believe the allegations are such that Mr. Hardin is essentially a *de facto* "next friend" although not designated as such. Significantly, this action was *not* filed by Ms. Morrison as "next friend" of the petitioner.[8]

In the present action, there has been no ruling that the petitioner may not proceed through a "next friend," whether that individual is Mr. Hardin or Ms. Morrison. Indeed, the present action has been maintained from its inception to the present time with Mr. Hardin acting as the petitioner's *de facto* "next friend," and the judge of the lower court has allowed the petition to proceed in that form notwithstanding her ruling in the prior action that the petitioner could not proceed through a "next friend." Without a ruling that the petition in the present case may not be maintained through a "next friend," the question whether a "next friend" may maintain a post-conviction petition is not justiciable in this proceeding.[9]

Although this litigation is related to, and even resultant from, the lower court's ruling *in the prior action* that a post-conviction petition may not be maintained by a "next friend," review of the adverse ruling of the lower court should have been pursued via direct appeal of the prior action. *See* Tenn. R. App. P. 3(b) (appeal as of right from final judgment in post-conviction proceeding).

We must conclude that we improvidently granted review of this question.

**II**

The second issue is whether a post-conviction court may, *sua sponte*, order a mental evaluation of the prisoner or conduct other inquiries into the matter to determine whether the "next friend" petition was properly filed on the prisoner's behalf. We agreed to review this issue only if we first determined that a "next friend" may maintain a post-conviction petition on behalf of an incompetent prisoner. Because we have held that there is no justiciable question of the propriety of a "next friend" petition before us, the second issue, as stated, is likewise not justiciable. We believe,

---

[8]The only effort to include Ms. Morrison as "next friend" appears to be counsel's unilateral adoption of the style "Jesse C. Minor, b/n/f Leann Morrison and by and through counsel, Hal Hardin v. State of Tennessee" after the lower court appointed the attorney *ad litem* and ordered the mental evaluation. We are aware of no basis upon which a person may unilaterally inject herself into pending litigation without permission of the court, and the petitioner has made no attempt to justify this anomalous action.

[9]At this juncture, we are compelled to comment that when the petitioner applied to this court for extraordinary review, he obfuscated the true nature of the proceeding by employing in the application a unilaterally adopted caption indicating Ms. Morrison was proceeding as "next friend" of her father, Mr. Minor. We have now reviewed the full appellate record transmitted to us, and it is apparent that there is no "next friend" controversy in the present case.

however, that examination of a closely related question is appropriate. That question is whether the lower court properly entered a *sua sponte* order for a mental evaluation of the allegedly incompetent prisoner to assist the court in determining (1) whether the petitioner is competent to make decisions regarding pursuit of the case, and (2) if not, whether the petitioner's best interests are being served by his present attorneys.

The post-conviction petition, brought "by and through counsel" on the petitioner's behalf by one of his several attorneys, alleges that the petitioner "lack[s] the requisite mental capacity and competence" to bring the action on his own. Because of the involvement of several of the petitioner's post-conviction attorneys in varying capacities in the civil case arising out of the same underlying facts, the lower court became concerned about possible conflicting interests of the petitioner's goals in the post-conviction and civil cases as well as those of counsel in representing the petitioner and/or his family members in both actions. For this reason, the lower court ordered a mental evaluation of the petitioner at Middle Tennessee Mental Health Institute to determine his "present mental competency to assist counsel and participate meaningfully in his pending post-conviction petition . . . ." Although it does not appear in the appellate record, we discern that the lower court entered a companion order appointing Attorney Loy to assist with the mental examination in the role of attorney *ad litem*.[10] In the absence of the pertinent order from the appellate record, we are unable to know what the lower court envisioned as the precise contours of the attorney *ad litem*'s role. From statements made by the court at a hearing transcribed and placed in the appellate record, however, it appears that the court anticipated Attorney Loy's role as a dual one of court-appointed advocate and interim guardian for the petitioner during the mental examination and hearing on competency.

---

[10] An unauthenticated copy of what purports to be this order was filed as an exhibit with the petitioner's application for Rule 10 review. While this document was properly submitted in support of the Rule 10 application, an authenticated copy of it was, for some reason, excluded from the appellate record that was certified to us by the lower court clerk. *See* Tenn. R. App. P. 24(a). The parties were not powerless to place this document before us. The Rules of Appellate Procedure allow a party to add any item to the record which is "necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(g). Neither party chose to seek supplementation of the record. Although the petitioner included a document purporting to be such an order in the appendix to his brief, that document is not evidence that we may consider. *See, e.g., Hartsell v. Fort Sanders Regional Med. Ctr.*, 905 S.W.2d 944, 949 (Tenn. Ct. App. 1995); *William Sturm v. Evelyn Hunnicutt*, No. 01A01-9201-CH-00003 (Tenn. Ct. App., Nashville, Oct. 7, 1992); *Inman v. Inman*, 840 S.W.2d 927, 930 (Tenn. Ct. App. 1992). This court is bound by the record as certified on appeal from the lower court clerk and judicially knows only that which appears of record. Neither the uncertified documents accompanying the Rule 10 application nor the documents in the appendix to the petitioner's brief qualify as such.

With respect to the appendix to the petitioner's brief, it bears noting that the contents of an appendix are limited to documents that appear in the record. *See generally* Tenn. R. App. P. 28. Thus, documents that do not appear in the record are not even legitimately included in an appendix.

This issue is a complex one. We begin with an examination of the lower court's authority to address, *sua sponte*, questions related to best interests of an incompetent petitioner and conflicting interests of counsel.

We understand the basis for the lower court's concern about the possibility of conflicting interests. The petitioner's interests in the civil litigation are likely better served by avoiding the guilty plea he made in the prior criminal case, while his interests in the criminal litigation are perhaps better served by preserving the plea. Moreover, at least some of the petitioner's post-conviction attorneys presently or previously have represented members of the petitioner's family who may have interests in preserving the estate of the elderly and apparently ill petitioner via the petitioner's avoidance of the guilty plea and thereby potential avoidance of civil liability. If the petitioner is competent, he may resolve the question of these conflicting interests by choosing the course of action which he prefers. If he is not, these decisions should be made by a representative who owes him an undivided duty of loyalty.

The lower court sought to determine whether the petitioner was competent to make these decisions, and if not, whether his interests were properly being protected by the attorneys involved in representing his interests, one of whom stands as his representative in this action. To that end, the court ordered the mental evaluation and appointed Attorney Loy as the attorney *ad litem* for purposes of the competency inquiry.

With respect to Attorney Hardin's continuing involvement as the *de facto* "next friend" of the petitioner, our supreme court has said,

> While a next friend may in a certain sense be a volunteer in bringing suit, the continuance of the exercise of his function is within the power of the court. It is in the province of the court of pendency, at any time, to inquire into his fitness to represent the interests of the incompetent, and to allow or direct that some one else be substituted in his place.

*Williams v. Gaither*, 139 Tenn. 587, 591, 202 S.W. 917, 918 (1918) (citing *Kingsbury v. Buckner*, 134 U. S. 650, 10 S. Ct. 638 (1890)). Therefore, the court had the authority to inquire into the propriety of Attorney Hardin's involvement as representative of the petitioner, and if necessary, appoint a substitute representative.

Similarly, a court may disqualify counsel if it finds that counsel's representation of a party is contrary to the Code of Professional Responsibility. *In re Ellis*, 822 S.W.2d 602 (Tenn. Ct. App. 1991). The lower court in this case has not, at this juncture, disqualified any of the petitioner's attorneys from further representation, although it has appointed Attorney Loy in a dual capacity of guardian and advocate for purposes of the competency inquiry.

In view of the question of potential conflicts affecting Attorney Hardin as *de facto* next friend and other members of the petitioner's legal team, we are convinced that the appointment

of Attorney Loy as guardian and advocate for a limited purpose was a proper exercise of the court's authority. *See Goins v. Yowell*, 41 Tenn. App. 280, 286, 293 S.W.2d 251, 254 (1956) (appointment of a guardian *ad litem* is for purpose of protecting the incompetent in the litigation).

Once the competency inquiry is completed, Mr. Minor will either be before the court as a competent party, in which case he may retain or discharge his present counsel, or alternatively, he will be before the court as an incompetent party, in which case the court may allow him to proceed through Attorney Hardin as his representative or appoint Attorney Loy or some other individual as his guardian *ad litem* for the remaining litigation.[11] If the latter situation of incompetency arises and if the petitioner is not indigent, the petitioner's representative would have the duty of choosing counsel to represent Mr. Minor, subject to the court's authority to discharge any attorney whose representation would run afoul of the Code of Professional Responsibility.

Having determined that the court had the authority to inquire into competency and conflicting interests, we next consider the court's authority for ordering the mental examination as a means of effecting the inquiries. The order directing the mental examination does not state any underlying legal authority. During the hearing which preceded this order, the court posited that its authority for the examination was "not through your regular competency to stand trial statute, . . . [T]his more comes under the inherent authority of the Court . . . as opposed to any pigeon hole that I can find . . . ." In a subsequent order denying reconsideration of the ruling, the court held that Code section 33-7-301 provided authority for the court's *sua sponte* action.

Section 33-7-301 provides for mental examination of criminal defendants and post-conviction petitioners in limited circumstances. The pertinent portions of that statute provide:

(a)(1) When a defendant charged with a criminal offense is believed to be incompetent to stand trial, or there is a question about the defendant's mental capacity at the time of the commission of the crime, the criminal, circuit, or general sessions court judge may, upon such judge[']s own motion or upon petition by the district attorney general or by the attorney for the defendant and after hearing, order the defendant to be evaluated on an outpatient basis. . . .

---

[11] Counsel for the petitioner argues that the lower court's actions have denied the petitioner his right to counsel of his choosing in violation of the Sixth Amendment. Any such right has not been implicated at this stage. The court has not discharged the petitioner's post-conviction counsel. As the case presently stands, Attorney Hardin is the *de facto* next friend and Attorneys Mitchell, Howser, Hardin and Hill are counsel of record. Attorney Loy has not been appointed in preference to any of these individuals; he is merely the attorney *ad litem* for the limited purpose of the competency inquiry. If the court does at some point disqualify the petitioner's counsel, then the petitioner may then present any Sixth Amendment claim of this nature that he believes exists. Before doing so, however, the petitioner's counsel may wish to review *Caruthers v. State*, 814 S.W.2d 64, 69 (Tenn. Crim. App. 1991), in which this court said, consistent with the United States Supreme Court, that the Sixth Amendment does not apply to post-conviction proceedings.

(2)     At any stage of a felony criminal proceeding, including a pre-trial hearing, trial, sentencing, or post-conviction proceeding, the state may move or petition the court to authorize the district attorney general to designate a qualified expert to examine the defendant if the defendant gives notice that the defendant intends to offer testimony about the defendant's mental condition, whether in support of a defense of insanity or for any other purpose. . . .

Tenn. Code Ann. § 33-7-301(a)(1)-(2) (2001). Simply put, the court may on its own motion order a mental evaluation in a trial proceeding, but it has no specific authority under this statute to do so in a post-conviction proceeding. The post-conviction court's reliance on section 33-7-301 as authority for the mental examination is misplaced.

This does not end our inquiry, however. Tennessee Rule of Evidence 706 provides that, in bench-tried cases, "the court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed and may request the parties to submit nominations." Tenn. R. Evid. 706. Moreover, Supreme Court Rule 28, the rule governing post-conviction cases, allows the court the latitude to enter such orders "as are necessary to the efficient management of the case" and "as may be required." *See* Tenn. R. Sup. Ct. 28, §§ 6(B)(3)(e), 6(B)(7). We believe that these provisions gave the lower court the legal authority to order the mental evaluation.

The next question is whether that authority was properly exercised. Rule 706 provides, "[T]he court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed and may request the parties to submit nominations." Tenn. R. Evid. 706. In most cases, the appointed experts should be agreed upon by the parties, although the rule does allow the court to appoint experts of its own choosing. *Id.*

The lower court did not follow the Rule 706 procedure of entering a preliminary show cause order and permitting the parties to submit nominations for the mental evaluation expert. Upon consideration, we believe that any error is *de minimus* because the lower court afforded the parties the opportunity to address the propriety of the mental evaluation. This took place at what was originally scheduled to be the evidentiary hearing and evolved into essentially a *de facto* show cause hearing. The record reflects that the petitioner was allowed a thorough opportunity to oppose the mental evaluation at this hearing, which he did at some length. The petitioner was afforded an additional opportunity to voice his opposition at the subsequent hearing on the motion to reconsider, and he also did so in an extensive memorandum filed with the court.

Likewise, we see no prejudice to the petitioner in the court's choice of expert without accepting nominations. The court ordered the evaluation at Middle Tennessee Mental Health Institute, one of the entities authorized to perform mental evaluations in criminal cases or on motion of a party in a post-conviction case. *See* Tenn. Code Ann. § 33-7-301 (2001). Even though we have held above that section 33-7-301 does not apply to post-conviction mental evaluations on the court's

motion, that statute does provide guidance in determining the propriety of the trial court's choice of expert. We therefore hold that the choice of expert was a reasonable and logical one.

We decline to find error in the lower court's order of a mental examination, appointment of the attorney *ad litem*, and inquiry into competency and conflicting interests.

### III

Finally, we consider whether the court below properly denied the petitioner's motion for recusal. The petitioner claims that recusal is required because (1) the judge was previously employed in a supervisory position with the district attorney's office; (2) the judge met with one of the petitioner's prospective expert witnesses in chambers without the presence of counsel; (3) the trial court made an *ex parte* investigation by reviewing the circuit court file in the civil case; and (4) the trial court has issued "egregious rulings" and has not adhered to Supreme Court Rule 28.[12]

Recusal is appropriate whenever a trial judge's impartiality can be reasonably questioned. Tenn R. Sup. Ct. 10, Canon 3(E)(1); *State v. Cash*, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993). A trial judge's denial of a motion to recuse will be upheld absent a showing of abuse of discretion. *Cash*, 867 S.W.2d at 749. Reasons which warrant recusal include:

(a)     the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b)     the judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it.

Tenn. R. Sup. Ct. 10, Code of Judicial Conduct, Canon 3E(1)(a), (b).

In support of his first argument for recusal, the petitioner relied in part on the lower court judge's application for judicial nomination. This application reflects that the judge was, indeed, fulfilling a supervisory role in the district attorney's office prior to her appointment. She stated in the application that she "supervise[s] the Criminal Court and General Sessions Team Assistants (approximately 19)." Her practice involved "complex drug, homicide, and other types of cases which may require in-depth investigation and preparation [with which she] works closely

---

[12]The first three recusal issues presented on appeal were raised and addressed in the petitioner's second request for recusal. The fourth issue was not raised as a basis for recusal below. The petitioner's first request for recusal has not been included in the record. Apparently, the first request was in the form of a letter sent to the court which was then filed with the clerk when received by the court. A document appearing to be a copy of this letter appear in the appendix to the petitioner's brief but not in the record itself. As discussed in note 6 above, documents appearing in the appendix but not the appellate record are not properly before the appellate court. We have not considered any information or allegations contained in the first request for recusal, except insofar as they were also raised in the second request.

with the Vice and Homicide Divisions of the Police Department." In her order denying the first request for recusal,[13] the judge found that she was one of over 40 attorneys in the district attorney's office at the time the petitioner committed his crime that resulted in the underlying proceedings. She found that she had no role in the investigation, indictment and prosecution of the petitioner in her prior employment and that she had no knowledge of the facts of the case other than those gained in her capacity as judge. She also found that she had been appointed to the bench over a year prior to the return of the petitioner's indictment. At a subsequent hearing on the issue, the court found that her former role in the district attorney's office did not include supervisory authority over child sex abuse cases.

In his brief, the petitioner argues that the district attorney's office was actively involved in the case against the petitioner "[a]lmost from the inception of the alleged offense." He also claims that his proof at the post-conviction evidentiary hearing will involve the conduct of the district attorney's office and one particular assistant district attorney, and the judge should not be in the position of assessing the credibility of her former subordinate employee. Notwithstanding these claims, the petitioner has not demonstrated that anything in the record belies the lower court's findings that she had no involvement, whether investigatory or supervisory, with the petitioner's criminal case while she was in the district attorney's office.

The Commentary to the Code of Judicial Conduct says,

> A lawyer in a government agency does not ordinarily have an association with other lawyers employed by that agency within the meaning of Section 3(E)(1)(b); a judge formerly employed by a government agency, however, should disqualify himself or herself in a proceeding if the judge's impartiality might reasonably be questioned because of such association.

Tenn. R. Sup. Ct. 10, Code of Judicial Conduct, Canon 3E(1)(b) (Commentary).

This Commentary is instructive in the case at bar. The judge has dispelled, without contradiction, any concerns about her actual involvement as a prosecutor or supervisor of the prosecutor in this case. The district attorney's office was a large one, with over 40 attorneys. The judge, when employed as a prosecutor, performed duties in the district attorney's office unrelated to this case. Furthermore, there is nothing in the vague allegations about the conduct of another prosecutor that so much as indicates that the conduct transpired during the judge's tenure in the district attorney's office or that the allegedly culpable individual was employed during the same time period that the post-conviction judge served as a prosecutor. It appears from documents filed in support of the post-conviction petition that the prosecutorial misconduct allegation pertains to

---

[13]As stated in notes 6 and 12 above, the petitioner's first request for recusal is not properly before us as part of the appellate record. The order denying it is, however. It is apparent from the record that the trial judge's former employment was at issue in both the first and second motions. The judge's findings in her first order are therefore pertinent to resolution of this issue.

discovery violations and allowing false testimony at the sentencing hearing, both of which would necessarily have occurred after the return of the indictment. The judge found that she had departed from the district attorney's office over one year prior to the indictment's return. On these facts, we see no abuse of discretion in the lower court's denial of the motion to recuse based upon former employment as a prosecutor. *Accord Owens v. State*, 13 S.W.3d 742, 757-58 (Tenn. Crim. App. 1999), *perm. app. denied* (Tenn.), *cert. denied*, 531 U.S. 846, 121 S. Ct. 116 (2000).

The second basis upon which the petitioner sought recusal of the trial judge was her in-chambers conference with Professor Neil Cohen, a prospective expert witness for the petitioner. The petitioner does not allege that the merits of the case were discussed, but he claims that an appearance of impropriety exists. The judge found that her communications with Professor Cohen were related to an earlier, unrelated conversation about jury selection in capital cases. We see nothing actually improper about this communication. With respect to the appearance of impropriety, Professor Cohen is, at this point, only a prospective witness. He is the petitioner's witness, and if the judge has misrepresented the nature of their communication, it is within the petitioner's power to bring that evidence to light. He has not done so. Nothing in the disciplinary rules for judges or lawyers prohibits judges, lawyers and professors of law from communicating with one another about unrelated matters when they are involved in varying capacities in ongoing litigation, and no improper appearance is generated in the usual circumstances. The lower court did not abuse its discretion in denying the motion to recuse on this basis. *See State v. Jones*, 735 S.W.2d 803, 810 (Tenn. Crim. App. 1987) (no basis for recusal when trial court held *ex parte* conference with prosecutor mid-trial about unrelated matter and defendant failed to show prejudice).

Next, the petitioner takes issue with the lower court's review of the circuit court file in the civil case. He claims this was an improper independent investigation by the court. The law is clear that the court must generally restrain itself to consideration of those facts that are before it and may not conduct an independent investigation. *See* Tenn. R. Sup. Ct. 10, Code of Judicial Conduct, Canon 3E(7)(e) (Commentary) ("A judge must not independently investigate facts in a case and must consider only the evidence presented."); *State v. Hart*, 911 S.W.2d 371, 376 (Tenn. Crim. App. 1995). We believe, however, the court was empowered to judicially notice the civil file.

A court may take judicial notice of facts "not subject to reasonable dispute" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(a). "Court records fall within the general rubric of facts readily and accurately determined." *State v. Nunley*, 22 S.W.3d 282, 288 (Tenn. Crim. App. 1999), *perm. app. denied* (Tenn. 2000). *But cf. State v. Cash*, 867 S.W.2d 741, 748-49 Tenn. Crim. App. 1993) (trial judge should have recused himself after *ex parte* communication with prosecutor and review of appellate court record relative to prior appeal of case, those actions culminating in the court *sua sponte* entering an order attempting to reinstate a conviction previously vacated by the appellate court).

When a court intends to rely upon judicial notice principles to bring facts otherwise outside the record into play in a proceeding, Rule 201 provides a mechanism for hearing upon

request "as to the propriety of taking judicial notice and the tenor of the matter noticed." Tenn. R. Evid. 201(e). Implicitly, the aggrieved party must register a timely objection under subsection (e); otherwise, the noticed facts are taken as given in the trial and appellate proceedings.[14] *Nunley*, 22 S.W.3d at 28; *see* Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Payne, Tennessee Law of Evidence § 2.01[6][b] (4th ed. 2000) ("Failure to request a hearing can bar later appellate review of judicial notice.").

In this case, the record reflects that the lower court referred to records of the civil proceedings on two occasions. First, at the October 11, 2000 hearing which resulted in the appointment of the attorney *ad litem* and the mental examination order, the judge returned from a recess and announced that she had obtained the court file from the civil case. She said, "I hope nobody objects." Both parties were silent. Counsel for the petitioner expressed opposition to appointment of the attorney *ad litem* and the competency inquiry, but none of the petitioner's attorneys, at least three of whom were present, voiced any objection to the court's reference to the civil case file. Thereafter, in the December 4, 2000 order denying the motion to reconsider rulings that resulted from the October 11, 2000 hearing, the court recited facts gleaned from the civil file. Interestingly, however, it was not until January 10, 2001 that the petitioner registered any objection to the court's reference to the civil file, just one day shy of three months after the court first referred, without objection, to the civil pleadings and filings.

The court records of the civil case were facts capable of ready and accurate determination. *Nunley*, 22 S.W.3d at 288; *see* Tenn. R. Evid. 201(a). The court expressed its intent to rely on those facts in October, and counsel stood mute as the court proceeded to do so. The court did so a second time in December, and again counsel was silent. No objection was registered until nearly three months after the court's first reliance on judicially noticed facts and one month after the second occurrence. Even then, counsel did not make a request under Rule 201 for a hearing on the propriety of judicial notice. We hold that the petitioner's counsel waived any complaint they might have under Rule 201 to the court's reference to the civil file by failing to promptly request a hearing on the propriety of judicial notice.

Because the court properly exercised its powers of judicial notice, the references to the civil file did not constitute an improper, *ex parte* investigation, and provided no basis for recusal.

Finally, we consider the petitioner's argument that recusal is appropriate because of the lower court's "egregious rulings and refusal to adhere to Supreme Court Rule 28." First of all, this issue was not raised as a basis for recusal below, and it was not a basis upon which we granted Rule 10 review. It is therefore not properly before us.

---

[14]We recognize that a criminal defendant's constitutional right to jury trial prevents judicial notice from operating as a conclusive determination of the fact noticed. *See generally* Cohen, *et al.*, at § 2.01[8][c]. However, when the issue in a criminal case is one to be determined by the court, rather than a jury, the court's act of taking judicial notice is coterminous with its acceptance, in its role as finder of fact, of the noticed fact as conclusively determined. Such is the case here.

However, we feel compelled to comment on the lower court's handling of these proceedings. As discussed above, we find nothing egregious about the lower court's rulings. Moreover, we do not believe the lower court has run afoul of Rule 28's scheduling guidelines for prompt disposition of post-conviction actions. First, it must be noted that the evidentiary hearing in this case was scheduled within the guidelines of Rule 28. The lower court postponed that hearing upon discerning the necessity of inquiry into the petitioner's mental competency and conflicting interests of counsel. The petitioner's counsel then pursued several lengthy motions in the lower court and the Rule 10 application to this court. The petitioner's counsel's objections to the competency and conflicts inquiry have contributed to the delay. While counsel certainly has the right to oppose that inquiry, we will not lay the cause for the delay at the feet of the trial court, which acted appropriately in the situation presented. In fact, we are compelled to commend the lower court. Due to the many unique motions filed by the petitioner's counsel and the unusual circumstances presented, the lower court has done an exemplary job of managing the case and proceedings under challenging circumstances.

In conclusion, we hold that we improvidently granted review of the first issue. On the other two issues, we affirm the rulings of the lower court.

_____
JAMES CURWOOD WITT, JR., JUDGE