# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 27, 2010 Session

## STATE OF TENNESSEE v. BRENT ALLEN BLYE

**Appeal from the Criminal Court for Sullivan County**
**Nos. S46,736; S48,639; S50,833; S51,239     R. Jerry Beck, Judge**

---

**No. E2008-00976-CCA-R3-CD - Filed February 14, 2011**

---

Following a jury trial, the Defendant, Brent Allen Blye, was convicted in Case Number S50,833 of possession with intent to sell 26 grams or more of cocaine, a Class B felony, and two Class A misdemeanors and was sentenced by the trial court pursuant to an agreement by the parties. At the sentencing hearing, the Defendant pled guilty to several felony and misdemeanor charges in three unrelated cases and was sentenced pursuant to a plea agreement to an effective term of 30 years. In this appeal as of right, the Defendant contends that (1) his pro se motions should be considered as a motion for new trial in Case Number S50,833; (2) the evidence presented at trial was insufficient to sustain his convictions in Case Number S50,833; (3) the trial court erred in denying his motion to withdraw his guilty pleas in Case Numbers S46,736, S48,639, and S51,239; (4) his right to a speedy trial was violated in Case Number S46,736; (5) the trial court erred in sentencing him; and (6) the trial judge who presided over the sentencing hearing for all four cases should have recused herself. Following our review, we affirm the convictions but remand the case for the entry of corrected judgments consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed in Part; Reversed in Part; Case Remanded.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Jason R. McLellan, Kingsport, Tennessee, for the appellant, Brent Allen Blye.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; H. Greeley Wells, District Attorney General; and William B. Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant was convicted by a jury in Case Number S50,833 on February 21, 2006, and the trial court held a sentencing hearing, pursuant to agreement, for all four cases on April 24, 2006. Judge Jerry Beck presided over the trial in Case Number S50,833, and Judge Phyllis Miller presided over Case Numbers S46,736; S48,639; and S51,239. Following the Defendant's conviction in Case Number S50,833, the Defendant agreed to consolidate his cases in one hearing with Judge Miller presiding. In that hearing, the Defendant pled guilty in Case Numbers S46,736; S48,639; and S51,239 and was sentenced pursuant to a plea agreement. Additionally, the Defendant was given an agreed sentence in Case Number S50,833. The Defendant was sentenced as follows:

| Case | Offense | Disposition | Sentence |
|------|---------|-------------|----------|
| S46,736 | Sale of less than .5 grams of cocaine, a Class C felony | Pled Guilty | 10 years at 35%; Multiple Offender |
|  | Delivery of less than .5 grams of cocaine in a school zone, a Class B felony | Merged |  |
| S48,639 | Possession with intent to sell less than .5 grams of cocaine within a school zone, a Class B felony | Pled Guilty | 8 years at 100%; Standard Offender |
|  | Possession with intent to sell a Schedule IV controlled substance in a school zone, a Class C felony | Pled Guilty | 6 years at 30%; Standard Offender |
|  | Possession with intent to sell a Schedule VI controlled substance in a school zone, a Class C felony | Pled Guilty | 6 years at 30%; Standard Offender |
|  | Possession of less than .5 ounces of marijuana, a Class A misdemeanor | Pled Guilty | 11 months and 29 days |
|  | Possession of a legend drug, a Class C misdemeanor | Pled Guilty | 30 days |
|  | Assault, a Class A misdemeanor | Pled Guilty | 11 months and 29 days |
| S50,833 | Possession with intent to sell 26 grams or more of cocaine, a Class B felony | Convicted by Jury | 12 years at 35%; Multiple Offender |
|  | Possession of a Schedule III controlled substance, a Class A misdemeanor | Convicted by Jury | 11 months and 29 days |
|  | Possession of less than .5 ounces of marijuana, a Class A misdemeanor | Convicted by Jury | 11 months and 29 days |

| | Possession of drug paraphernalia, a Class A Misdemeanor | Dismissed | |
|---|---|---|---|
| S51,239 | Robbery, a Class C felony | Pled Guilty | 10 years at 35%; Multiple Offender |

In each case, all counts were to be served concurrently with one another. Thus, the Defendant received effective sentences of 10 years in Case Number S46,736; 8 years in Case Number S48,639; 12 years in Case Number S50,833; and 10 years in Case Number S51,239. At the sentencing hearing, the trial court ordered the Defendant to serve his sentences in Case Number S46,736 and S50,833 consecutively to each other and consecutively to S48,639. The trial court also ordered the Defendant to serve his sentence in Case Number S51,239 concurrently with his sentence in Case Number S50,833, for a total effective sentence of 30 years. Our review of the record reveals that the judgments do not conform with the trial court's recitation of the Defendant's manner of service for his sentences. When a discrepancy exists between an order in the technical record and the transcript, the transcript controls. State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). Therefore, the judgment in Case Number S50,833 should be corrected to reflect that the Defendant was ordered to serve his sentence in Case Number S50,833 consecutively to his sentences in Case Number S48,639 and Case Number S46,736 but concurrently with his sentence in Case Number S51,239. The judgment in Case Number 51,239 should also be corrected to reflect that the Defendant was ordered to serve his sentence in Case Number 51,239 concurrently with his sentence in Case Number 50,833.

## ANALYSIS

### I. Motion for New Trial

The judgments in Case Number S50,833 were filed on April 27, 2006. The Defendant filed two pro se motions on May 15, 2006 that referenced all of the Defendant's case numbers. The first motion was entitled, "Motion to Verify That Plea Agreement That was Held On April 24, 2006 is Correct." The second motion was entitled, "Motion to Withdrawal of Plea of Guilty (If) the Judgment Isn't What Defendant Agreed." The Defendant then filed another pro se motion entitled, "Motion for New Trial" on August 2, 2006. He filed another motion entitled, "Motion for New Trial" on November 9, 2006, and through counsel, he filed an amended motion for new trial on March 10, 2008. Defense counsel also filed a motion requesting that the motions filed on May 15, 2006 be considered as a motion for new trial in Case Number S50,833. On March 14, 2008, defense counsel filed another amended motion for new trial.

At the April 9, 2008 hearing on the Defendant's motion for new trial, the trial court found that the motion for new trial and amendments were untimely. The Defendant urged the trial court to consider the two motions that were filed on May 15, 2006, as a timely motion for new trial. The trial court found that neither of these two motions could be construed as a motion for new trial. On May 5, 2008, the Defendant filed a pro se notice of appeal, and on May 7, 2008, he filed another notice through counsel. On August 19, 2008, the trial court's order denying the motion for new trial as untimely was filed. On August 29, 2008, the Defendant filed another notice of appeal.

The Defendant contends that the trial court erred in denying his motion for new trial in Case Number S50,833 as untimely because the trial court should have considered his post-judgment motions as a motion for a new trial when the motions referenced all of the case numbers. Specifically, the Defendant urges this court to consider his motion to withdraw his guilty plea as a motion for new trial because as he did not plead guilty in Case Number S50,833, treating this motion as a motion for new trial would better fit the context of the case. The State responds that neither of the motions filed within the time-limit can be construed as a motion for new trial because both motions discuss the Defendant's guilty pleas.

The motions filed on May 15, 2006, discussed the nature of the plea agreements that were entered on April 24, 2006. The motions did not discuss the Defendant's conviction in Case Number S50,833 other than a notation on the top of the motions and a reference to the sentence that he received pursuant to an agreement by the parties. The Defendant does not contest the sentence he received in Case Number S50,833 or the manner in which he was ordered to serve that sentence. While we acknowledge the Defendant's assertion that pro se motions are afforded a certain sense of liberal construction, these motions simply cannot be construed as motions for new trial when the substance of the motions did not even mention the Defendant's trial in Case Number S50,833. See Young v. Barrow, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (stating that courts should "give effect to the substance, rather than the form or terminology" of a pro se motion). Indeed, the Defendant filed another motion entitled, "Motion for New Trial" two months later and cited counsel's failure to file a motion for new trial as his reason for filing the subsequent motion. Accordingly, we conclude that the record supports the trial court's decision on this issue.

The Defendant's motion for new trial was untimely filed on August 2, 2006 – more than two months past the filing deadline. The 30-day filing deadline of a motion for new trial is mandatory, jurisdictional, and may not be extended. Tenn. R. Crim. P. 45(b); State v. Martin, 940 S.W.2d 567, 569 (Tenn. Crim. App. 1997). Consequently, "[a] motion for new trial which is not timely filed is a nullity." State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). Subsequent review or considerations by the trial court or agreements of

parties to hear an untimely motion will not validate the motion for the purposes of appellate review.  Id.; State v. Davis, 748 S.W.2d 206 (Tenn. Crim. App. 1987).  Failure to file a timely motion for new trial will result in the waiver of all appellate issues that would result in the granting of a new trial.  Dodson, 780 S.W.2d at 780; State v. Williams, 675 S.W.2d 499, 501 (Tenn. Crim. App. 1984).  While this court cannot review those grounds upon which a new trial was sought, we may review those issues which would result in dismissal.  Tenn. R. App. P. 3(e); Williams, 675 S.W.2d at 501; see also State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980).  Therefore, as relevant to the Defendant's trial in Case Number S50,833, we may review the sufficiency of the convicting evidence.

While we may review the sufficiency of the convicting evidence pursuant to Rule 3(e) of the Tennessee Rules of Appellate Procedure, Rule 4(a) still requires the filing of a notice of appeal within 30 days of the entry of judgment or, pursuant to Rule 4(e), the entry of an order denying the motion for new trial.  Because the Defendant's motion for new trial was a nullity, it did not toll the 30-day period for filing the notice of appeal.  Therefore, the notice of appeal in this case was also untimely.  See, e.g., State v. Patterson, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997); Davis, 748 S.W.2d at 207.  The timely filing of a notice of appeal is not a prerequisite to the jurisdiction of this court, and this court may waive the requirement in the interest of justice.  Tenn. R. App. P. 4(a).  However, this court has warned "the bench and bar alike should be on notice that there is no automatic appeal of these issues to this [c]ourt."  State v. John A. Turbyville, No. E2002-00629-CCA-R3-CD, 2003 WL 21983022, at *1 (Tenn. Crim. App. Aug. 21, 2003).  In order to secure review of issues raised by the Defendant, a timely filed notice of appeal must occur, or a waiver of the timely filed notice of appeal must be sought and obtained in this court.  In State v. Heather Massengill, No. E2006-02602-CCA-R3-CD, 2008 WL 2019462 (Tenn. Crim. App. May 12, 2008), this court dismissed the appeal due to the untimely motion for new trial and notice of appeal and the failure of the defendant to seek a waiver of the timely notice of appeal.

The Defendant in this case contends that the pro se motions were timely and should have been treated as a motion for new trial, thereby rendering his notice of appeal as timely. The Defendant asserts, in the alternative, that if we decline to accept his argument, the interest of justice mandates waiver given the nature of the issues presented for review and the "procedural posture" of the case. Following our review, we conclude that the interest of justice mandates waiver when the pro se Defendant, who was unschooled in the law, filed various post-trial motions he mistakenly believed would extend the time for filing his notice of appeal.  The Defendant also filed notices of appeal following the trial court's order denying his motions for new trial as untimely.  Because we choose to waive the filing of a timely notice of appeal, we shall address the sufficiency of the convicting evidence.

*Sufficiency*

The Defendant contends that the trial court erred in denying his motion for judgment of acquittal and that the evidence was insufficient to sustain his convictions of possession with intent to sell over 26 grams of cocaine, possession of a Schedule III controlled substance, and possession of less than .5 ounces of marijuana. In this section of his argument, the Defendant also raises several issues that are unrelated to the sufficiency of the convicting evidence. The Defendant asserts that the evidence in his case should have been suppressed because the officers did not have a warrant to search the hotel room; that inadmissible hearsay statements were admitted; and that opinion testimony should not have been admitted. As these issues do not relate to the sufficiency of the convicting evidence and plain error review of these issues is not warranted given the facts of this case, we will not address these issues. See Tenn. R. App. P. 36(b). The State responds to the Defendant's sufficiency argument that the evidence was sufficient to support the convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

Taken in the light most favorable to the State, the evidence reflects that these convictions stem from the arrest of the Defendant for the charge of robbery in Case Number S51,239.[1] On November 12, 2004, Detective Jason Grant Bellamy of the Kingsport Police

---

[1]The jury was not aware of the prior charge; however, the jury was told that detectives were looking for the (continued...)

-6-

Department, accompanied by Detective Mark Mason and Officer Jeff Kendrick, went to the Comfort Inn in Kingsport, Tennessee to look for the Defendant. When they arrived at the hotel, Detective Bellamy asked the staff if the Defendant had rented a room. When the staff told him that the Defendant did not have a room at the hotel, he asked if Savonna Collier, who had been seen with the Defendant and identified as his girlfriend, had rented a room. They learned that Ms. Collier had rented room 264.

Detective Bellamy and the other officers went to room 264. Ms. Collier answered the door, and after they identified themselves, Ms. Collier allowed them to come inside. They found the Defendant asleep on the bed closest to the door, wearing only a thin shirt, jeans, and socks. They arrested the Defendant. After the Defendant was taken from the room, Ms. Collier asked Detective Bellamy if he would let the Defendant have his jacket, which had been underneath the Defendant on the bed. Detective Bellamy retrieved the jacket from the bed and searched it. Inside the jacket, he found three blue pills labeled "Watson 5-4-0" and a prescription bottle filled with what appeared to be crack cocaine. Detective Bellamy collected the evidence and asked Ms. Collier to accompany him to the police station. Ms. Collier complied, and by that time, the Defendant had already left in a patrol car. Once they arrived at the police station, Detective Bellamy gave the items retrieved from the jacket to Detective Sean Chambers, who identified the contents of the pill bottle as cocaine. Detective Chambers spoke with Ms. Collier, who gave him the key to the hotel room.

Detective Chambers went to the hotel with Detective Sergeant Dale Phipps and Detective Steve Hammonds. They searched Ms. Collier's room and found several items in the drawer of the table that was located between the two beds in the room. Inside the drawer, Detective Chambers found a plastic bag that contained approximately six other plastic bags. In two bags, he found plant material. In three bags, he found a white substance. In another bag, he found tan-colored rocks. He also found "cash in the amount of $612" and two receipts. Both receipts referenced the Defendant. In the storage area underneath the drawer of the table, Detective Bellamy found several tan-colored rocks on top of a Comfort Inn notepad. On the bed closest to the door, he found a cigarette box that contained a blue pill, labeled "Watson 5-4-0" and a small amount of plant material. He found a blue shirt on the same bed, and in the left pocket of the shirt, he found a hand-rolled cigarette. He continued to search the rest of the room but did not find anything else. The room did not contain any baggage or clothing other than the blue shirt found on the bed. The room also did not contain any crack pipes, straws, or syringes that may have been used to ingest the drugs found in the room. Detective Chambers later learned that a razorblade had been found on the Defendant.

_____

[1] (...continued)

Defendant.

Detective Chambers then went to the hotel office and retrieved a copy of the registration form, which showed that the room was registered to Ms. Collier and that two individuals were staying in the room.

According to Detective Chambers, the approximate value of the cocaine found in the hotel room was $3,000. His estimate was based on the weight of the cocaine and the "going price in the city of Kingsport." He stated that the crack rocks that were found in the room would normally be sold as "individual rocks" after they were "broken down into smaller quantities." He also stated that the crack rocks could be sold as they were found.

The rocks found in the pill bottle contained cocaine base and weighed 16.84 grams. The white powder found in the three bags contained cocaine and weighed 6.93 grams. The rocks found in the other plastic bag contained cocaine base and weighed 1.79 grams, .44 grams, and 4.36 grams. The rocks found in the storage area of the bedside table contained cocaine base and weighed .39 grams. Thus, there was a total of 23.8 grams of crack rocks, and 6.93 grams of powder cocaine. The plant material was tested and found to contain marijuana, and the total weight of the plant material was 5.9 grams. The blue pills were tested and found to contain Dihydrocodeinone, a Schedule III drug.

Relative to the Defendant's conviction of possession with intent to sell over 26 grams of cocaine, the State was required to prove beyond a reasonable doubt that the Defendant knowingly possessed 26 grams or more of cocaine with the intent to sell the cocaine. Tenn. Code Ann. § 39-17-417(a)(4), -417(c)(1), -417(i)(5). "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed for the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419. "Possession may be actual or constructive." State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). Constructive possession occurs when a person knowingly has the "power and the intention at a given time to exercise dominion and control over an object, either directly or through others." Id. (quoting United States v. Craig, 522 F.2d 29 (6th Cir. 1975)).

The amount of cocaine in this case exceeded 26 grams and was found either in the Defendant's jacket or in a drawer that also contained $612 and two receipts that referenced the Defendant. Given the amount of cocaine and the cash found in the room, we conclude that the evidence was sufficient for a jury to determine that the Defendant had the intent to sell the illegal drugs. Because the Defendant was found asleep on the bed in the hotel room on top of a jacket containing some of the illegal substances and next to the table filled with crack cocaine and receipts bearing his name, we conclude that he had constructive possession

of the drugs. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's conviction of this offense.

Relative to the Defendant's conviction of possession of a Schedule III controlled substance, the State was required to prove beyond a reasonable doubt that the Defendant "knowingly possess[ed] or casually exchange[d] a controlled substance" that was not "obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." Tenn. Code Ann. § 39-17-418(a). Here, several blue pills that tested positive for Dihydrocodeinone were found in a jacket that the Defendant had been sleeping on and in a cigarette box that was found on the bed in which the Defendant was sleeping. No evidence suggested that the Defendant had a prescription for these pills or that they were legally in his possession. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's conviction of this offense because he had constructive possession of the pills.

Relative to the Defendant's conviction of possession of less than .5 ounces of marijuana, the State was required to prove beyond a reasonable doubt that the Defendant knowingly possessed marijuana. Tenn. Code Ann. §§ 39-17-417, -418(a). Here, plant material that tested positive for marijuana was found in a drawer that also contained $612 and two receipts that referenced the Defendant. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's conviction of this offense because he had constructive possession of the marijuana.

II. Motion to Withdraw Guilty Pleas

The Defendant contends that his guilty pleas were not voluntarily and knowingly entered because he believed that he would serve his sentence in Case Number S46,736 concurrently with his sentence in Case Number S48,639. He contends that he would not have pled guilty if he knew that he would have to serve these sentences consecutively. He further contends that manifest injustice exists to permit the Defendant to withdraw his guilty pleas because the trial court did not conduct an alternative sentencing hearing for the Defendant. The State responds that the Defendant was fully aware of the terms of the plea agreement. The State asserts that the plea agreement form signed by the Defendant in Case Number S46,736 specifically provided that the sentence would run consecutively to the sentence he received in Case Number S48,639. The State also asserts that the trial court and defense counsel explained the terms of the plea agreement to the Defendant and that the Defendant knowingly and voluntarily pled guilty.

On April 9, 2008, a hearing on the Defendant's motion to withdraw his guilty pleas was held. The Defendant testified that he met with his attorney on May 2, 2005, and discussed a plea offer that they had received from the State. Later that day, that attorney was permitted leave to withdraw at the request of the Defendant and counsel. Another attorney was appointed, who was also allowed to withdraw after the Defendant and counsel requested that he be able to withdraw. The Defendant stated that he was then told by the trial court on August 2, 2005, that he would have to represent himself. However, the trial court later appointed another attorney to represent the Defendant. That attorney had a conflict; therefore, another attorney, who represented him at trial and at the guilty plea hearings, was appointed to represent him in "September or October of 2005."

The Defendant stated that on April 23, 2006, after the trial on Case Number S50,833, trial counsel came to the jail and spoke with him about an agreement for sentencing in all four cases. Trial counsel told him that he would "receive all [of his] pretrial jail time in all cases" and "explained . . . that [Case Number S46,736] would be ran concurrent with [Case Number S48,639]." The Defendant stated that this agreement was similar to what he understood the State was offering on May 2, 2005. He stated that he always believed that those two cases would be served concurrently with one another. He admitted that trial counsel showed him the plea agreement documents, but he insisted that he still believed that the two cases were to be served concurrently with one another. He also admitted that he responded affirmatively when the trial court asked him if he understood the agreements, but he stated that he "just pled to [his] best interest on each - each case" and that he was relying on his attorney's advice.

The Defendant then identified a letter that he had written Assistant District Attorney General Harper on March 22, 2006. In that letter, he offered to waive his appellate rights if he were given a 12-year sentence at 35% instead of a 15-year sentence at 35% in Case Number S50,833. He also stated that he would "sign the 8 flat and 12 at 35%." However, also included in the letter, the Defendant explained that he believed that the "15 was going to be running [concurrently] with the 8 flat." The Defendant then stated, "but obviously it ain't it's consecutive which is a big difference sir!" (emphasis in original).

On cross-examination, the Defendant stated that he must have been confused when he wrote the letter because he always believed that those sentences were to be served concurrently with one another. The Defendant admitted that he had entered guilty pleas before, had jury trials in Sullivan County, and had been through sentencing hearings. The Defendant also admitted that he was not under the influence of any medications or substances on the day that he pled guilty, that he responded affirmatively when asked by the trial court

if he understood everything, that he signed the plea agreement documents, and that he was able to read. The Defendant then stated that he signed the forms without "paying real close attention."

On re-direct examination, the Defendant stated that the letter he sent the Assistant District Attorney indicated that he did not understand the agreement and that he would not sign an agreement unless he were given concurrent sentencing. He again stated that he relied on his counsel's advice that he would receive concurrent sentencing in those cases. He stated that his motion to withdraw his guilty plea was mailed on April 25, 2006, the day after he pled guilty.[2]

Trial counsel testified that he remembered the plea negotiations and that he remembered discussing the agreements with the Defendant. He stated that he believed that the Defendant understood the agreements as they were written in the plea agreement documents. On cross-examination, he stated that the plea agreement documents accurately reflected the agreement that he had negotiated with the State.

Following the evidentiary hearing, the trial court denied the Defendant's motion. The court found trial counsel to be a credible witness and stated that the Defendant was not "particularly reliable or credible." The trial court stated that he did not find "any manifest injustice that could result or has resulted to the Defendant." The trial court stated that the Defendant failed to carry his burden and that the guilty pleas "were entered knowingly, voluntarily, and with knowledge of . . . the requisite things set out in Rule 11."

A defendant may seek to withdraw a guilty plea for any fair and just reason before the trial court imposes the sentence. Tenn. R. Crim. P. 32(f)(1). Once the trial court imposes the sentence but before the judgment becomes final, the court "may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). Our supreme court has stated,

> Withdrawal to correct manifest injustice is warranted where: (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 [] (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not

---

[2]The file stamp indicates that the motion was filed on May 15, 2006.

knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

State v. Crowe, 168 S.W.3d 731, 742 (Tenn. 2005).  This court has also held that "[w]here there is a denial of due process, there is a 'manifest injustice' as a matter of law."  State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991).  "Conversely, a trial court will not, as a general rule, permit the withdrawal of a plea of guilty to prevent 'manifest injustice' when the basis of the relief is predicated upon (a) an accused's change of heart, (b) the entry of the plea to avoid harsher punishment, or (c) an accused's dissatisfaction with the harsh punishment imposed by a trial court or a jury."  State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).  The appellate court is bound to uphold the trial court's determinations regarding the withdrawal of a guilty plea unless the record demonstrates that the trial court abused its discretion.  Id.; State v. Drake, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986).

Relative to the Defendant's contention that the trial court should have held an alternative sentencing hearing, the plea agreements reflect that the Defendant waived his right to an alternative sentencing hearing.  The Defendant stated on the record at the guilty plea hearing that he was aware of his right to an alternative sentencing hearing and that he did not wish to have such a hearing in Case Number S46,736.  Accordingly, this issue is without merit.

At the guilty plea hearing, the Defendant did not indicate that he did not wish to plead guilty or that the sentences as he understood them varied from the sentences he received.  On the contrary, he answered all of the trial court's questions affirmatively and indicated that the agreement was the result of the discussions between his attorney and the State.  The Defendant does not contend that he was unable to voluntarily and knowingly plead guilty.  He merely contends that the plea agreement as understood by him was not reflected in the plea agreement documents or in the judgments.  However, a review of the record indicates that the Defendant was informed at the hearing that his sentence in Case Number S46,736 would be served consecutively to the sentence he received in Case Number S48,639.  Additionally, trial counsel stated that the plea agreement documents and the judgments accurately reflected his understanding of the agreement with the State.  Accordingly, we conclude that the record supports the trial court's decision to deny the Defendant's motion to withdraw his guilty pleas in Case Numbers S48,639; S46,736; and S51,239.

III. Speedy Trial

The Defendant contends that the trial court should have dismissed the charges in Case Number S46,736 because there was a "13 month post accusation delay" and "an 18 month period between the date of the alleged offense and the filing of the Presentment." The Defendant asserts that during this delay, two potential alibi witnesses passed away, causing prejudice to the Defendant. The State contends that the Defendant waived consideration of this issue when he chose to plead guilty.

The Defendant filed a motion to dismiss on April 19, 2004, asserting that his right to a speedy trial had been violated and that the charges in his case should be dismissed.[3] The State responded on April 21, 2004, asserting that the delay between the return of the presentment and the indictment was not presumptively prejudicial. Following a hearing with the trial court on the motion, the parties were instructed to file memorandums of law on the issue. The Defendant filed a memorandum of law on April 30, 2004 in support of his motion to dismiss, and the State responded to this motion on July 23, 2004. It is not clear from the record if the trial court ever ruled on this motion. However, on April 24, 2006, the Defendant pled guilty and was sentenced in Case Number S46,736.

Once the state initiates criminal proceedings, the right to a speedy trial is implicated pursuant to the Sixth Amendment to the United States Constitution and to article I, section 9 of the Tennessee Constitution. See Tenn. Code Ann. § 40-14-101 (2006); Tenn. R. Crim. P. 48(b). The right is meant "to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." State v. Utley, 956 S.W.2d 489, 492 (Tenn. 1997) (citing Doggett v. United States, 505 U.S. 647, 654 (1992)). "[T]he defendant's right to a speedy trial is a personal one[] and may be waived." Wright v. State, 405 S.W.2d 177, 180 (Tenn. 1966). When a defendant chooses to plead guilty, the interests protected under the right are no longer implicated. See generally State ex rel. Lewis v. State, 447 S.W.2d 42, 45 (Tenn. Crim. App. 1969) (concluding that the defendant waived his right to a speedy trial by pleading guilty). Consequently, in deciding to plead guilty, a defendant waives his right to a speedy trial. Id. Following our review, we conclude that the Defendant has waived this issue by entering into a plea agreement with the State.

---

[3]This motion was not contained in the record on appeal; however, from the other motions contained in the record, it is apparent that the Defendant filed a motion on April 19, 2004, in which he asserted that his right to a speedy trial had been violated.

IV. Sentencing

The Defendant contends that the trial court erred in sentencing him. Specifically, he asserts that the trial court did not reference the presentence report when sentencing him and did not conduct any proceedings relevant to determining alternative sentencing. Therefore, he contends that this court should use the de novo standard of review when reviewing the trial court's sentencing decision. The State responds that the trial court properly sentenced the Defendant and that the Defendant cannot contend otherwise because he was sentenced pursuant to an agreement by the parties. The State further responds that the Defendant stated at the guilty plea hearing that he was not seeking any form of alternative sentencing. In his reply brief, the Defendant contends that he did not issue a proper written waiver electing to be sentenced under the revised sentencing act as enacted by the Tennessee General Assembly in 2005 or pursuant to the pre-2005 sentencing act. Thus, he asserts that he is entitled to a new sentencing hearing.

Because the Defendant pled guilty pursuant to an agreement by the parties in all four cases, this issue has no merit. While the Defendant was convicted by a jury in Case Number S50,833, the Defendant still agreed to the sentence and was sentenced pursuant to that agreement. Rule 3(b) of the Tennessee Rules of Appellate Procedure provides that a defendant may appeal his sentence if "there was no plea agreement concerning the sentence."

As to the Defendant's contention that the trial court did not conduct an alternative sentencing hearing, the Defendant expressly stated that he was not seeking alternative sentencing and that he agreed to his sentences. As to the Defendant's contention that he did not elect to be sentenced under the revised sentencing act, the Defendant agreed to his sentence and was sentenced pursuant to an agreement.

V. Recusal of Trial Judge

The Defendant contends that Judge Miller should have recused herself in case number S46,736 because she had numerous dealings with the Defendant when she was an Assistant District Attorney General. The Defendant filed numerous motions to recuse Judge Miller, and defense counsel notes that the Defendant "was frustrated by the fact he was taking a plea before a judge he believed had a conflict of interest and should have recused herself." The State responds that Judge Miller acted within her discretion in denying the Defendant's motion to recuse as she was not required to recuse herself merely because she had previously prosecuted the Defendant. The State further responds that the Defendant has failed to

provide any support for his argument that Judge Miller abused her discretion by declining to recuse herself from the case.

The Defendant in this case filed numerous pro se motions on various different subjects. Relative to his requested recusal of Judge Miller, the Defendant filed three pro se motions to recuse Judge Miller. These motions were filed on: October 20, 2003; April 7, 2004; and July 8, 2004. Defense counsel also filed a motion to recuse the trial court on November 20, 2003.

In the pro se motion that was filed on July 8, 2004, the Defendant wrote on one of his exhibits that the motion was heard on April 22 and denied. Also included in this motion was a copy of the Defendant's judgment from a 1992 case and a 1995 case. Relative to the 1992 case, R. Jerry Beck is listed as an attorney for the State; however, David Overbay is also listed on a separate section of the judgment. Relative to the 1995 case, the judgment reflects that David Overbay represented the State; however, the name "Phyllis Miller" is handwritten beside Mr. Overbay's name. Additionally, the Defendant attached a partial transcript from one of the hearings in that case. The transcript reflects that Judge Beck presided over the hearing; that David Overbay was representing the State; and that "General Miller" also participated in the case. Accordingly, the Defendant is essentially arguing that Judge Miller should have recused herself because of her participation in an unrelated 1995 case in which she was not even listed as the attorney of record.

In another pro se document, the Defendant wrote Judge Beck a letter in which he stated that Judge Miller wrongfully denied his motion to recuse herself. He also attached documents from the Tennessee Court of the Judiciary that he received in relation to a complaint he filed against Judge Miller and another copy of his judgment from the 1995 case and the transcript.

Other than the Defendant's handwritten assertion that the motion was heard and denied on April 22, the record does not reflect whether the Defendant's motions to recuse were ever heard or denied. Judge Beck presided over the Defendant's trial in Case Number S50,833 on February 1, 2006, and over the hearing on April 9, 2008, in which he denied the motion for new trial and the motion to withdraw the Defendant's guilty plea. Judge Miller presided over the hearing on April 24, 2006, in which the Defendant pled guilty in Case Numbers S46,736; S48,639; and S51,239, was sentenced pursuant to a plea agreement in those three cases, and was sentenced pursuant to an agreement in Case Number S50,833. The last motion to recuse Judge Miller was filed in 2004, and Judge Miller presided over the guilty plea submission hearing in 2006.

The trial judge's decision to recuse is a matter of his or her discretion. Caruthers v. State, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991). On appeal, this court will not reverse the decision of the trial judge unless the evidence in the record indicates an abuse of that discretion. Pannell v. State, 71 S.W.3d 720, 725 (Tenn. Crim. App. 2001); State v. Cash, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993). A judge should recuse himself or herself whenever the judge's "impartiality [could] reasonably be questioned." Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994) (quoting Code of Judicial Conduct, Canon 3(c) (now part of Tenn. Sup. Ct. R. 10, Canon 3(E)(1)). Furthermore, recusal is appropriate "whenever the judge has any doubts about his or her ability to preside impartially" or "when a person of ordinary prudence in the judge's position . . . would find a reasonable basis for questioning the judge's impartiality." Id. (footnote omitted). Therefore, any trial judge addressing a motion for recusal must determine whether he or she has a subjective bias against the defendant and whether the trial judge's impartiality could reasonably be questioned under an objective standard. State v. Connors, 995 S.W.2d 146, 148 (Tenn. Crim. App.1998).

The judge in the instant case served as a representative of the State in a case involving the Defendant in 1995. The facts of the 1995 case were not pertinent to the cases in which Judge Miller presided over at the plea agreement hearing or throughout the litigation of the cases prior to the plea agreement hearing; moreover, the Defendant was sentenced pursuant to an agreement by the parties. Following our review, we conclude that recusal was not warranted given the facts of this case.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed in part; reversed in part. The case is remanded for the trial court to correct the judgment in Case Number S50,833, which should reflect that the Defendant was ordered to serve his sentence in Case Number S50,833 consecutively to his sentences in Case Number S48,639 and Case Number S46,736 but concurrently with his sentence in Case Number S51,239. The judgment in Case Number 51,239 should also be corrected to reflect that the Defendant was ordered to serve his sentence in Case Number 51,239 concurrently with his sentence in Case Number 50,833.

_____
D. KELLY THOMAS, JR., JUDGE