# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs at Knoxville December 9, 2014

## IN RE:  AMERICAN BONDING COMPANY

**Appeal from the Circuit Court for Williamson County**
**No. 0012      Michael W. Binkley, Judge**

**No. M2014-00249-CCA-R3-CD - Filed February 26, 2015**

This is an appeal by Williamson County Bail Bondsman, Amir Karshenas of American Bonding Company, of the trial court's denial of his motion to recuse the judge from hearing matters related to his authority to conduct business as a bail bondsman.  Following our review, we affirm the denial of the motion to recuse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., joined.  TIMOTHY L. EASTER, J., Not Participating.

Geoffrey Coston, Franklin, Tennessee, for the appellant, American Bonding Company.

Herbert H. Slatery, III, Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Kim R. Helper, District Attorney General; and Mary K. White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS and PROCEDURAL HISTORY

This case has a somewhat involved history.  To aid in an understanding of the background of the instant appeal, we find it useful to turn to the facts section of our direct appeal opinion in a related case in which Karshenas appealed the trial court's suspension of his status as a bonding agent in the 21st Judicial District:

> The case at bar originates with a long-standing dispute between American Bonding Company and Grumpy's Bail Bonds.  The record reflects that as far back as 2002, Leah Hulan, the President of Grumpy's Bail Bonds,

filed a complaint with the Williamson County courts regarding three instances in which American Bonding Company allegedly solicited bonds in a place where prisoners were confined, an activity designated as "unprofessional conduct" by Tennessee Code Annotated section 40-11-126(6).

On May 26, 2011, in response to "numerous complaints" of unprofessional conduct filed by Grumpy's Bail Bonds against American Bonding Company, Judge Robbie Beal sent a letter to Amir Karshenas of American Bonding Company. The letter indicated that certain allegations of violations were "supported in part by employees of the Sheriff's Department" and by the affidavit of an inmate bonded out by Grumpy's Bail Bonds. The letter listed the dates of alleged violations as September 8, 2010; September 18, 2010; October 22, 2010; November 17, 2010; November 19, 2010; November 29, 2010; January 31, 2011; and March 29, 2011.

The trial court, however, disavowed the intention of eliciting a formal response, holding a hearing, or sanctioning the company. The court instead, citing its desire to "attempt to start anew," asserted that the letter was "a mere warning that any conduct of the nature complained of will not be tolerated" and suggested that American Bonding Company review the law with its agents. It also warned, in a comment apparently aimed at Grumpy's Bail Bonds, that frivolous complaints would be dealt with harshly.

On June 23, 2011, the trial court filed a notice of hearing to determine if any violations had occurred. This hearing was prompted by a complaint regarding the solicitation of the business of Paul Cox in Williamson County Juvenile Court on May 25, 2011, the day prior to the trial court's letter. The hearing was ultimately scheduled for September 12, 2011, but on August 9, 2011, the trial court issued a second notice of hearing regarding allegations that Amir Karshenas had solicited the business of Patrick Hamilton on July 11, 2011.

At the September 12, 2011 hearing, the trial court heard evidence solely regarding the alleged solicitation of Mr. Cox. Citing some inconsistencies in testimony, the trial court found that Mr. Cox's testimony was not reliable and concluded that it could not find, by a preponderance of the evidence, that the violation had taken place.

On October 4, 2011, the trial court filed an order and notice of hearing based on Mr. Karshenas's arrest for the September 28, 2011 aggravated assault

of Kevin Davis, Ms. Hulan's husband and an agent of Grumpy's Bail Bonds, with a motor vehicle. The trial court subsequently gave a separate notice on November 10, 2011, regarding allegations that on October 13, 2011, Mr. Karshenas, while speaking to Harold Reid, made threats against Mr. Davis and displayed a firearm. The trial court also intended to hold a hearing regarding a misdemeanor assault against Ms. Hulan on October 21, 2011, arising out of an incident in which he was alleged to have struck her and then threatened her in the courtroom.

At the December 19, 2011 hearing, the State elected not to proceed with the charges based on allegations by Mr. Hamilton or Mr. Reid, and Mr. Karshenas made an offer of proof regarding certain witnesses who would have contradicted the testimony of those witnesses. The trial court also concluded that the misdemeanor assault charge should not result in suspension. Because Mr. Karshenas represented to the trial court that Mr. Davis had brandished a weapon, that the aggravated assault took place as Mr. Karshenas attempted to escape, and that Mr. Karshenas intended to bring charges against Mr. Davis, the trial court did not act to suspend Mr. Karshenas based on the aggravated assault charges. Instead, the trial court determined that it would suspend Mr. Karshenas if the grand jury did not indict Mr. Davis when it next met. On February 17, 2012, the District Attorney General's office moved to suspend Mr. Karshenas based on his failure to file notice of his September 29, 2011 felony arrest within seventy-two hours, in violation of Tennessee Code Annotated section 40-11-319.

On March 1, 2012, Judge Robbie Beal suspended Mr. Karshenas's ability to act as a bonding agent, stating the court would review the suspension when the criminal proceedings had been completed.

Mr. Karshenas filed a motion to be reinstated as a bonding agent on January 11, 2013. At the February 12, 2013 hearing, the State acknowledged that the charge had been reduced to a misdemeanor for which Mr. Karshenas was on judicial diversion, and the State conceded that there was no legal basis to oppose reinstatement. On February 13, 2013, Judge Michael Binkley ordered Mr. Karshenas's reinstatement, noting that he had pled guilty to misdemeanor assault pursuant to Tennessee Code Annotated section 40-35-313 and that "no further legal basis for excluding Mr. Karshenas" existed.

The trial court, on February 21, 2013, entered an sua sponte order

setting a hearing to reconsider the order reinstating Mr. Karshenas. At a hearing held on February 25, 2013, the trial court informed the parties that, having reviewed the entire file, it intended to vacate its order reinstating Mr. Karshenas. The trial court explained:

> Had I known . . . what I know now the morning that this motion was made I would have never, ever under any circumstances granted the motion. There is a substantial amount of information in this file that I, frankly, was not told about. . . . I don't think this gentleman should ever be writing bonds ever again in this county or anywhere else in the 21st Judicial District.

The trial court referenced, as a cause of its decision to vacate, "this gentleman's conduct over the past, and I'm just telling you it culminated in this criminal warrant and the facts underlying the criminal warrant and the arrest and the affidavit and the information that he pled to." Mr. Karshenas's attorney asked the trial court to clarify what it meant by "underlying facts," asking, "Are you talking about all of these complaints that have been filed against him that were dismissed?" The court answered, "Part of it, yes. That's part of it. . . . Also, the accusations in the motion that was filed before Judge Beal, also the statements that are made on the record that were in--that is filed with the Court, everything in the file." Mr. Karshenas's counsel then asserted that most of the complaints against Mr. Karshenas had been disproved, to which the court responded, "Some, some were." The trial court also referenced the underlying facts of the aggravated assault as a reason to vacate the order.

Counsel for Mr. Karshenas moved for a hearing to adjudicate the prior allegations of misconduct, which counsel characterized as having been previously dismissed. The trial court denied the motion for a hearing, asserting that it was not basing its ruling on any prior evidentiary hearings.

After the hearing, the trial court, in an order entitled "Order to Vacate Previous Order Reinstating Bonding Agent," vacated its reinstatement of Mr. Karshenas, finding "upon further review of the file in its entirety and the facts contained therein," that suspension was "appropriate at this time" and suspending Mr. Karshenas until further notice. During the hearing, the trial judge had twice stated his understanding that "[h]e is right back where he started from prior to the order," and "[h]e's right back where he started from,

-4-

not writing bonds."

Mr. Karshenas appeals, arguing that the trial court did not have the statutory authority to suspend him because none of the provisions of Tennessee Code Annotated section 40-11-125(a) were met.

In re American Bonding Co., No. M2013-00735-CCA-R3-CD, 2013 WL 6705994, at *1-3 (Tenn. Crim. App. Dec. 19, 2013) (footnotes omitted).

This court agreed with Karshenas that the trial court did not properly provide him with notice of the charges resulting in his suspension or the opportunity to deny those charges in writing and at a hearing, and, accordingly, vacated the order of suspension and remanded the case to the trial court for further proceedings consistent with our opinion. Id. at *1. According to Karshenas' brief in the instant appeal, the trial court, on remand, reversed its suspension of his authority to write bonds in an order entered on February 24, 2014. In the instant appeal, Karshenas filed a motion with this court requesting consolidation of the record in the 2013 appeal of his suspension as a bonding agent with the record of this case involving the bond forfeiture of one of Karshenas' clients. We denied the motion. We stated, however, that the parties would be allowed to cite the record in the previous case and that we would take judicial notice of that record as necessary.

Also of relevance to this appeal is Grumpy's Bail Bonds' February 16, 2012 motion to recuse Judge Robbie T. Beal from hearing matters related to its complaints of unprofessional conduct by Karshenas. The motion alleged that the trial judge had demonstrated bias toward Karshenas and prejudice against Hulan and Grumpy's by refusing to investigate the complaints or to take any action against Karshenas. On March 16, 2012, the trial court entered an order denying Grumpy's motion for recusal.

On June 3, 2013, Judge Michael W. Binkley held a forfeiture hearing regarding Wendell Washam, a criminal defendant who had fled to Australia to avoid prosecution after having his bond posted by American Bonding Company. At that hearing, the prosecutor announced an intention to file "a motion to clarify the terms of [Karshenas'] probation," specifically, the current suspension of his ability to write bonds. Karshenas' counsel, in turn, mentioned that he intended to file a motion to recuse the trial judge from the case, stated his belief that his client had been in compliance with the order of probation, and requested clarification from the court as to whether his client was in violation of the court's order by talking to his bounty hunters about locating Washam. The trial court replied:

Let me respond. You and I have a difficult time talking over each other. I don't think he's in compliance. I think he's messing around. I think

he's playing with the Court. I think he's playing with the clerks in the clerk's office trying to intimidate them and I don't like any of that, none of it, period. And I'm not going to let him hide behind some kind of recusal. These clerks have complained to me about his conduct. Somebody is going to do something about it, and if it has to be me it will be.

Now, am I upset about it, yes. Should I recuse myself because I'm upset about his conduct, no, no. It's exactly what he wants me to do and I am not going to do it. I do not like his conduct. I don't like him bullying women. I don't like him trying to intimidate women in the clerk's office or anywhere else and I will not under any circumstances tolerate it. I'm just telling you, okay, that's it.

When Karshenas' counsel indicated that he would speak to his client about his behavior, the trial court stated that he would "have to talk with him too somehow or someway or through court" because he did not intend to tolerate the intimidation. Karshenas' counsel then stated that the trial court's talking to his client about his behavior was "not [the] basis" for his motion to recuse.

On June 11, 2013, Karshenas filed the motion at issue in this case, arguing that Judge Binkley should recuse himself in the matter on two grounds: first, because he had formerly been a law partner in the firm of Schell, Binkley & Davies, PLLC, and had been consulted by one of his partners about Grumpy's Bail Bonds' motion to recuse Judge Beal, which had been filed by the law partner; and second, because he had demonstrated a prejudice toward Karshenas based on the ex parte information he had received from the court clerks about Karshenas' having engaged in a pattern of intimidation and bullying toward the women in the clerk's office. The trial court ruled on the motion during a June 17, 2013 hearing at which it also addressed the final forfeiture of Washam's bond and the State's motion to clarify the terms of Karshenas' probation and suspension of his bonding authority.[1] In the ruling, the court explained that the nature of his partnership consisted of sharing the rent, cost of supplies, and receptionist's salary but not the profits. He further explained that, although he and his fellow attorneys sometimes talked about their respective cases in passing, they were never actively involved in each other's cases and did not consult with each other about them. The court's ruling states in pertinent part:

I obviously was listed as a partner in the firm of Schell, Binkley and Davies,

---

[1]At the previous hearing, the prosecutor informed the court that Karshenas, despite the order of probation and the suspension of his license, had been coming to the courthouse and sitting directly behind agents of Grumpy's Bail Bonds during court proceedings.

but let me talk about the realities of practicing law in the way we practiced law and the way I practiced law for 35 years in my practice, private practice as an attorney. We did not share profits. I don't like sharing profits as a business matter. It's one of those deals where our firm, whatever case you had, you charged the client, you got the fee and that was your business. I handled all of my cases myself. . . . . We never shared profits. The only thing that we shared was, number one, the rent, number two, pencils, pens, things of that nature, number three, the receptionist's expenses.

From time to time, we would talk about or exchange information about cases in passing. The word "consultation," I think, is not the proper word. I heard some of the statements made about this case. I could not tell you today exactly what those statements were any more than I can tell you about other cases that I heard about from other attorneys in that firm or any more than they could possibly tell you about cases I talked to them about in passing.

So that's the way it worked. That was the structure of the firm. I was not actually consulted on this case for my opinion. I was told about the case and some of the facts like I was in . . . just about I'd say 30 to 40 percent of cases that the other lawyers had in passing. No sit-down discussion about the facts of the case, giving advice or my opinion about what I thought ought to happen. Frankly, I did not have the time to do that nor the inclination. . . . .

So it's easy, I guess, to kind of focus in on one case and try . . . to leave the impression that I concentrated on this case and for some reason as a result of that that I've developed some type of bias or that there is an appearance of impropriety that should be avoided. That's simply not the facts so I very respectfully decline to entertain your motion.

The trial court did not directly address the part of the motion based on the information imparted to him by the court clerks about Karshenas' behavior. Later in the hearing, however, the court reiterated that it would not tolerate intimidating behavior by anyone and asked Karshenas if he understood. Karshenas protested that he had never intimidated anyone, that he was a peace-loving man who had been the victim of discrimination by the court, and that he did not understand how he could be prevented from coming to the public area of the courthouse when he had a client that he needed to represent. At the conclusion of the hearing, the trial court asked the parties to prepare an agreed order setting out the parameters of Karshenas' order of probation and suspension of his license:

I would like for y'all to prepare an agreed order. We're going to try it this

way. If that doesn't work I want a full blown hearing, but I'm going to say it one more time. I, you know, guess I need to and, lawyer, you need to tell your client what I mean. No intimidation in any form whatsoever of any employees of the sheriff's department, any employees in this courthouse for any reason whatsoever, none. I'm not going to get into everything else about those problems, but I don't like it. I don't like women feeling intimidated because they're working here. I don't like any of that. I don't know if I can make that any clearer. No one should have to work under those types of conditions ever and I for one will not tolerate it at all. I can't make that any clearer. They need protecting and I'm going to do that.

On February 21, 2014, the court entered a written order denying the motion to recuse. In the order, the court addressed only whether he should recuse himself based on his former association with the law firm that had filed Grumpy's motion to recuse Judge Beal.

## ANALYSIS

Karshenas argues on appeal that "it is clear that the trial judge should recuse himself." In support, he asserts that the trial court on February 25, 2014, concluded without a hearing that he should not be writing bonds and on June 30, 2014, concluded without any evidence that he had been trying to intimidate the court clerks. In sum, Karshenas argues that the trial judge formed a negative opinion about him, which led the judge to conclude that he should not be writing bonds, based on the judge's "ex parte contact with unknown persons." The State responds by noting that there is nothing in the record about the February 25, 2014 hearing referenced by Karshenas, by arguing that Karshenas has waived consideration of the entire issue by his failure to follow the procedural requirements for filing a motion to recuse, and by arguing that Karshenas has waived consideration of his claim involving the judge's former association with the law firm by his failure to provide any argument or citation to the record. The State further argues that the trial judge's communications with his own employees and court staff do not constitute "ex parte communications" and that the court properly denied the motion to recuse.

As an initial matter, we note that, although Karshenas failed to cite to the record or provide any argument on the law firm association issue in the argument section of his brief, he did cite to the record and provide some, albeit limited, argument on the issue in the facts section. As such, we decline to conclude that he has waived consideration of this issue by his failure to cite to the record or provide adequate argument.

We agree, however, that Karshenas has waived consideration of the entire recusal issue based on his failure to follow the procedural requirements of a motion to recuse. Rule

10B of the Rules of the Tennessee Supreme Court provides in pertinent part that a motion to disqualify or recuse the trial judge

> shall be supported by an affidavit under oath or a declaration under penalty of perjury on personal knowledge and by other appropriate materials. The motion shall state, with specificity, all factual or legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Tenn. Sup. Ct. R. 10B, §1.01.

The State correctly points out that Karshenas failed to include any affidavit or declaration under penalty of perjury in his motion, or to include in the motion the statement that it was not being presented for any improper purpose. Rule 10B makes mandatory the filing of such an affidavit and statement. See Elliott v. Elliott, No. E2012-02448-COA-10B-CV, 2012 WL5990268, at *3 (Tenn. Ct. App. Nov. 30, 2012) (citing Tenn. Sup. Ct. R. 10B, § 1.01).

However, even if not waived, we would conclude that Karshenas is not entitled to relief on the basis of this issue. A trial judge should grant a motion to recuse whenever his or her impartiality can reasonably be questioned. Alley v. State, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). Recusal is "warranted when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." Id. The standard of review on appeal is whether the trial court abused its discretion by denying the motion. Bd. of Prof'l Responsibility v. Slavin, 145 S.W.3d 538, 546 (Tenn. 2004); State v. Cash, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993). The trial court's denial of the motion to recuse is, therefore, reviewed under an abuse of discretion standard.

Rule 10, Canon 2.11 of the Rules of the Tennessee Supreme Court provides in pertinent part:

> (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances:

> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

. . . .

(3) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, domestic partner, parent, or child, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or is a party to the proceeding.

. . . .

(6) The judge:

(a) served as a lawyer in the matter in controversy, or was associated with a lawyer who participated substantially as a lawyer in the matter during such association[.]

Tenn. Sup. Ct. R. 10, Canon 2.11(A)(1), (3), (6)(a).

A trial judge "is not disqualified from hearing a case because he or she has knowledge of the facts of the case." State v. Thornton, 10 S.W.3d 229, 237 (Tenn. Crim. App. 1999) (citing State ex rel Phillips v. Henderson, 220 Tenn. 701, 423 S.W.2d 489, 492 (1968)). The trial judge explained that he and his law partners did not share profits, work on each other's cases, or consult with each other on cases. Thus, although he may have heard something about the motion to recuse Judge Beal during casual conversation in passing, he was in no way actively involved in that case and could not recall any of the particulars.

We also agree that the judge's communications with the court staff do not constitute ex parte communications requiring his recusal. The rule governing a judge's ex parte communications provides in pertinent part:

(A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:

(1) When circumstances require it, ex parte communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:

(a) the judge reasonably believes that no party will gain procedural, substantive, or tactical advantage as a result of the ex parte communication;

and

      (b) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication, and gives the parties an opportunity to respond.

. . . .

      (3) A judge may consult with court staff and court officials whose functions are to aid the judge in carrying out the judge's adjudicative responsibilities, or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility personally to decide the matter.

Tenn. Sup. Ct. R. 10(2.9)(A).

The court clerks' complaints to the judge about Karshenas' intimidating and threatening behavior toward them did not constitute substantive information about the pending cases against Karshenas, and the judge's admonition to Karshenas, given such complaints, was proper. We note that counsel for Karshenas requested at both forfeiture hearings that the judge clarify the conditions of the order of probation and suspension of Karshenas' authority to conduct his business. Counsel also indicated, at the first forfeiture hearing, that the judge's admonitions to Karshenas about his threatening behavior was not the basis for his motion to recuse the trial judge. We, therefore, affirm the denial of Karshenas' motion to recuse the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE

-11-